941 So.2d 595 (2006)
The VILLAGE OF WELLINGTON, The City of Delray Beach, The City of Lake Worth, The Town of South Palm Beach, The City of Atlantis, and The City of West Palm Beach, Florida municipalities, Appellants,
v.
PALM BEACH COUNTY, Florida, a political subdivision, Appellee.
Nos. 4D05-2666, 4D05-2687.
District Court of Appeal of Florida, Fourth District.
November 22, 2006.
Rehearing Denied November 22, 2006.
*597 Claudio Riedi, Dexter Lehtinen and Anthony J. O'Donnell of Lehtinen, Vargas & Riedi, P.A., Miami; Jeffrey S. Kurtz and Jonathan M. Streisfeld, of Brinkley, Morgan, Solomon, Tatum, Stanley, Lunny & Crosby, LLP, Fort Lauderdale, for appellant Village of Wellington.
Susan A. Ruby, City Attorney, Delray Beach, for appellant City of Delray Beach.
Elaine A. Humphreys, Assistant City Attorney, Lake Worth, for appellant City of Lake Worth.
Keith W. Davis of Corbett & White, P.A., Lantana, for appellants City of Atlantis and Town of South Palm Beach.
Robert P. Banks, Assistant County Attorney, West Palm Beach, for appellee.
Linda Brehmer Lanosa, Assistant County Attorney, Orlando, for Amicus Curiae Orange County.

ON MOTION FOR REHEARING, REHEARING EN BANC, AND CLARIFICATION
SHAHOOD, J.
We deny the appellant's motion for rehearing and rehearing en banc, but grant the motion for clarification to correct typographical errors, and substitute the following opinion.
This action was commenced by The Village of Wellington, the City of Delray Beach, the City of Atlantis, the Town of South Palm Beach, and the City of Lake Worth (collectively "Appellants"), bringing an action for declaratory judgment and injunctive relief against Palm Beach County (PBC).[1] The declaratory judgment portion of the action challenged the validity of a 2004 amendment to the Palm Beach County Charter, which intended to provide an exclusive method of voluntary municipal annexation for the County. The trial court entered an order based on appellants' and PBC's cross-motions for summary judgment. The order entered found the Palm Beach County Charter Amendment to be partially valid, but contained three invalid provisions.
Appellants appeal the Order on Motions for Summary Judgment/ Final Judgment. Appellee, PBC, cross-appeals that part of the court's ruling that found the Charter Amendment contained three invalid provisions. We affirm the appeal and cross-appeal.
The order appealed related to an ordinance approved by the Palm Beach County Commission seeking to amend the County's charter involving voluntary annexation. The trial court in its ruling upheld the amendment by severing the invalid portions.
On August 17, 2004, the Palm Beach County Commission approved Ordinance 2004-021. The Ordinance set forth the proposed charter amendment language, and placed the following question on the ballot for the November 2, 2004, general election, in part:

*598 EXCLUSIVE METHOD OF VOLUNTARY ANNEXATION IN PALM BEACH COUNTY
Shall the Palm Beach County Charter be amended to authorize an ordinance providing the exclusive method for voluntary annexations, including notice requirements and designation of the area outside the urban service area as the unincorporated protection area where voluntary annexation must be approved by the county commission, and which includes unincorporated rural neighborhoods where voluntary annexation must be approved by the county commission and majority vote of electors residing within the boundaries of that neighborhood? Yes ___ No ___
On October 6, 2004, appellants filed an eight-count Complaint which included counts for declaratory judgment and injunctive relief against the County. Appellants requested the court to declare the proposed charter amendment and the ballot question invalid. Along with the complaint, appellants filed a Motion for Temporary Injunction, seeking to remove the ballot question from the November 2, 2004 ballot. The trial court denied the motion for injunction and permitted the Charter Amendment to be presented to the voters.
On November 2, 2004, the majority of the electorate of Palm Beach County voted "Yes" on the ballot question. As a result, Ordinance 2004-021 was passed, amending the County's Charter by adding the following language:
As set forth in Article VII of this Charter, Palm Beach County has the power to establish by ordinance the exclusive method for voluntary municipal annexation, to the extent authorized by law, including the designation of an unincorporated protection area and designation of unincorporated rural neighborhoods.
The Amendment gave the County Commission power to provide, by ordinance, the methods of "voluntary municipal annexation." It also authorized the County Commission to establish and change, by ordinance, "unincorporated protection areas" ("UPAs") and areas "eligible" to become "unincorporated rural neighborhoods" ("URNs"). The Amendment further authorized the County Commission to impose additional requirements for "voluntary annexation" at any time in the future. For unincorporated areas not in the UPA or URN, the proposed Charter Amendment gave the County Commission the right to adopt by ordinance an annexation method "no more restrictive than general law regarding the substantive requirements for such annexations."
On December 23, 2004, appellants filed a renewed Motion for Temporary Injunction, asking the court to enjoin the County from drafting an ordinance in reliance on the Charter Amendment. The court again denied the motion. The County proceeded to draft its ordinance.
On December 10, 2004, appellants filed a Motion for Summary Judgment, and on March 15, 2005, the County filed its response and a cross-motion for Summary Judgment.
The trial court found that section 171.044(4), Florida Statutes, requires that any exclusive method must be set forth in the charter itself, and not provided for by ordinance.
The court ruled that certain portions of the Amended Charter did contain a valid voluntary annexation method. The trial court severed the Charter and excised three provisions. The court let the remaining portions stand as the County's exclusive method of voluntary municipal annexation.
*599 The issue we address is whether the trial court erred in finding that section 171.044(4), Florida Statutes, authorizes counties to devise their own methods of voluntary municipal annexation. Section 171.044(4), Florida Statutes (2004), provides as follows:
171.044 Voluntary annexation.
. . . .
(4) The method of annexation provided by this section shall be supplemental to any other procedure provided by general or special law, except that this section shall not apply to municipalities in counties with charters which provide for an exclusive method of municipal annexation.
Appellants argue that section 171.044(4) does not allow charter counties to adopt new charter-based voluntary annexation methods for three reasons. First, they argue the Florida Constitution states that all "[m]unicipal annexation of unincorporated territory . . . shall be as provided by general or special law." Art. VIII, § 2(c), Fla. Const. (2005). Counties, they therefore urge, cannot alter the methods of annexation because it is the sole power of the legislature, which enacts general and special laws. Second, they urge that section 171.044(4) is simply a clarifying savings clause to avoid violation of the supplemental voluntary annexation statute (section 171.044, Florida Statutes) by Dade County. Dade County has an exclusive method of municipal annexation that would otherwise violate the statute without the savings clause. Third, they argue the word "voluntary" cannot be added to the phrase "municipal annexation" in subsection 171.044(4), Florida Statutes, even though the section is entitled "Voluntary Annexation." Adding "voluntary" would conflict with the subsection's plain and obvious meaning that it applies to all forms of "municipal annexation."
PBC argues that the court did not err, as section 171.044, Florida Statutes, authorizes counties to establish their own exclusive method of voluntary annexation.
Section 1 of the Florida Constitution, as amended provides broad home rule powers on charter counties:
(g) CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
Art. VIII, § 1(g), Fla. Const. (2005).
Amendments to a county charter must be consistent with the Florida Constitution, general law, and special law. See Charlotte County Bd. of County Comm'rs v. Taylor, 650 So.2d 146, 148 (Fla. 2d DCA 1995).
A "general law" operates universally throughout the state, uniformly upon subjects as they may exist throughout the state, or uniformly within a permissible classification. Martin Mem'l Med. Ctr., Inc. v. Tenet Healthsystem Hosp., Inc., 875 So.2d 797 (Fla. 1st DCA 2004). A "special law" is one relating to, or designed to operate on, particular persons or things, or one that purports to operate on classified persons or things when classification is not permissible or the classification adopted is illegal. Schrader v. Fla. Keys Aqueduct Auth., 840 So.2d 1050 (Fla.2003).
However, under subsection 171.044(4), Florida Statutes, if a charter of a county contains an exclusive method of municipal annexation, the procedures set out in section *600 171.044 do not apply and parties must follow the procedures of that charter.
In this case, the trial court found that subsection 171.044(4) allows charter counties to regulate voluntary annexation. The trial court found that to the extent that section 171.044(4) refers to "an exclusive method of municipal annexation," that reference must be interpreted as "voluntary" because it falls under the statute entitled "Voluntary Annexation."
A heading of a section or subsection of a statute is part of the law and can be used to glean statutory intent. See Dep't of Revenue v. Val-Pak Direct Mktg. Sys., 862 So.2d 1 (Fla. 2d DCA 2003); Fajardo v. State, 805 So.2d 961 (Fla. 2d DCA 2001) (title of a legislative enactment may be helpful in construing an ambiguous statute).
Appellants argue that the trial court erred because in section 171.044(4) the word "voluntary" is not used in the subsection to describe the method of annexation. Nonetheless, "[i]f the language is clear and unambiguous, we must apply the statutory provisions according to their plain meaning and as the Legislature wrote them." G.E.L. Corp. v. Dep't of Envtl. Prot., 875 So.2d 1257, 1260 (Fla. 5th DCA 2004). "A court's function is to interpret statutes as they are written and give effect to each word in the statute." City of Miami v. Valdez, 847 So.2d 1005, 1008 (Fla. 3d DCA 2003). The method of annexation under section 171.044 is entitled "Voluntary Annexation." Within subsection (4) is the reference to the method of annexation by clarifying as "provided by this section." Therefore the method of annexation that is the subject of subsection (4) is voluntary annexation.
Based on the foregoing, we hold the trial court correctly interpreted subsection (4) to allow charter counties to provide their own method of voluntary annexation.
The next issue we address is whether the trial court erred in attempting to sever the unconstitutional portions from the charter amendment.
Appellants argue that the lower court's attempt to sever invalid portions of the charter amendment made section 171.044, Florida Statutes, inapplicable in Palm Beach County. Section 171.044 provides a method of voluntary municipal annexation, but if a Charter has an exclusive method of municipal annexation, then the methods of voluntary annexation provided for in section 171.044 would not apply.
PBC argues that severability can be applied to charter amendments and that the lower court properly engaged in the four-part analysis set out in Ray v. Mortham, 742 So.2d 1276 (Fla.1999).
Section 6.4 of the Palm Beach County Charter, entitled "Savings Clause," states: "If any provision of this Charter is held invalid, in whole or in part, such holding shall not affect any other provision of this Charter." Furthermore, Part IV of the Charter Amendment ordinance contained a section entitled "Severability," which states that "[i]f any section, paragraph, sentence, clause, phrase, or word of this Ordinance is for any reason held by a Court of competent jurisdiction to be unconstitutional, inoperative or void, such holding shall not affect the remainder of this Ordinance." Ordinance 2004-021. Such severability clauses have been found to indicate an intent to retain the legislation without the invalid portions. See Ray, 742 So.2d at 1283 ("The initiative petition in this case specifically contained a severability clause, which is persuasive of the fact that the framers intended severability to save the amendment in case portions of it were declared invalid.").
The trial court used the analysis in Ray to sever and remove the invalid portions *601 of the Charter Amendment. The court in Ray sets out a four-part test in determining if a statute is allowed to stand after a portion of the statute is found unconstitutional. Id. at 1280-81. As applied to charters, when a part of a charter amendment is declared invalid, the remainder of the charter amendment will be permitted to stand, provided:
(1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.
Id. at 1281.
The trial court found three provisions within the Charter Amendment to be invalid:
(1) the amendment to [Article I,] Section 1.1, which states, "Palm Beach County has the power to establish by ordinance the exclusive method for voluntary municipal annexation, to the extent authorized by law,"
(2) the first sentence of newly-added Article VII, Section 1, which states, "all voluntary annexations shall be in accordance with the exclusive method for voluntary municipal annexation established by ordinance of the Board of County Commissioners," and
(3) the fifth sentence of Article VII, Section 1, which states, "For voluntary annexations outside the unincorporated protection area, the ordinance regulating such annexations shall be no more restrictive than general law regarding the substantive requirements for such annexations."
The trial court found these provisions to be invalid because they allowed the County Commission to define the exclusive method of voluntary municipal annexation for unincorporated areas not designated as either an "unincorporated protection area" or an "unincorporated rural neighborhood" by ordinance. The court concluded that the requirement in section 171.044(4) that the exclusive method of voluntary annexation be contained in the Charter itself was violated by allowing the County Commission to use an ordinance to accomplish the same goal. We agree and affirm as to this issue. We affirm as to all other issues raised on appeal and cross-appeal without further discussion.
Affirmed.
STEVENSON, C.J., and MAY, J., concur.
NOTES
[1] This opinion addresses the issues raised in the appeal filed by the Village of Wellington, City of Delray Beach, City of Lake Worth, Town of South Palm Beach, and City of Atlantis in Case No. 4D05-2666, and by the City of West Palm Beach in Case No. 4D05-2687. The City of West Palm Beach was not a signatory of the initial brief filed in this appeal nor did it separately file an initial brief. However, as a party in privity, it will be bound by the decision of this court. Cook v. State, 921 So.2d 631 (Fla. 2d DCA 2005).