964 So.2d 847 (2007)
PINELLAS COUNTY, Florida, a political subdivision, Appellant,
v.
CITY OF LARGO, Florida, a municipal corporation, and City of Seminole, Florida, a municipal corporation, Appellees.
No. 2D06-4826.
District Court of Appeal of Florida, Second District.
September 19, 2007.
*849 David S. Sadowsky, Assistant County Attorney, Clearwater, for Appellant.
Alan S. Zimmet and Natalie D. Wilhelm of Zimmet, Unice, Salzman & Heyman, P.A., Clearwater, for Appellee City of Largo.
John M. Elias, Clearwater, for Appellee City of Seminole.
James W. Denhardt, St. Petersburg, for Appellee City of Pinellas Park (as Intervenor).
Thomas B. Drage, Jr., County Attorney, and Joel D. Prinsell, Deputy County Attorney, Orlando, and Linda Brehmer Lanosa, Assistant County Attorney, Orlando, for Appellant's Amicus Curiae Orange County.
Harry Morrison, General Counsel, and Rebecca O'Hara, Deputy General Counsel, Tallahassee, for Appellee's Amicus Curiae Florida League of Cities, Inc., and John C. Wolfe, City Attorney, and Jeanne Hoffmann, Assistant City Attorney, St. Petersburg, for Appellee's Amicus Curiae City of St. Petersburg.
LaROSE, Judge.
Pinellas County (the County) appeals the trial court's final summary judgment entered in favor of the City of Largo and the City of Seminole (the Cities). The judgment invalidated three ordinances by which the County attempted to create an exclusive method of voluntary municipal annexation. The judgment recites that section 171.044(4), Florida Statutes (2005), did not allow the County to adopt such a method. We have jurisdiction. See Fla. R.App. P. 9.030(b)(1)(A). We affirm the judgment. We hold that the County may provide an exclusive method of voluntary municipal annexation in its charter under section 171.044(4). The County's exclusive method of voluntary municipal annexation, however, was ineffective because it was not set forth in the County charter and approved by the voters.

Background
The Municipal Annexation or Contraction Act (the Act), enacted in 1974, underlies this case. See §§ 171.011-.094; ch. 74-190, § 1, at 502-11, Laws of Fla. The central issue for our review is whether and how the County may adopt an exclusive method of voluntary municipal annexation. At the outset, we note that our constitution specifically addresses municipal annexation:
Municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities shall be as provided by general or special law.
Art. VIII, § 2(c), Fla. Const. Although annexation power resides in the first instance with the legislature, the legislature may share that power. See N. Ridge Gen. Hosp., Inc. v. City of Oakland Park, 374 So.2d 461, 464 (Fla.1979). The Act, a general law, establishes procedures for adjusting municipal boundaries. The Act reflects a legislative determination that municipal annexation or contractions should (1) ensure sound urban development and accommodation to growth, (2) be made pursuant to uniform legislative statewide standards, (3) ensure the efficient provision of urban services to areas that become urban in character, and (4) ensure that areas are not annexed unless municipal services can be provided to those areas. § 171.021; see also § 171.022 (stating that the purpose of the Act is to provide viable and usable general law standards and procedures for adjusting the boundaries of municipalities; repealing *850 provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974).
The Act provides two methods of annexation. The first is by referendum. A municipality may annex contiguous, compact, unincorporated territory according to set procedures, including a vote by the electors in the proposed annexation area. See § 171.0413.
The second methodvoluntary annexationallows all property owners in unincorporated, reasonably compact areas contiguous to a municipality to petition the municipality for annexation. See § 171.044. The 1974 version of the Act provided that voluntary annexation "shall be supplemental to the other provisions of this chapter." § 171.044(4), Fla. Stat. (Supp.1974). Therefore, voluntary annexation was an alternative to annexation by referendum. In 1975, the legislature amended section 171.044(4) to add language that remains in effect today:
(4) The method of annexation provided by this section shall be supplemental to any other procedure provided by general or special law, except that this section shall not apply to municipalities in counties with charters which provide for an exclusive method of municipal annexation.

See ch. 75-297, § 4, at 1079, Laws of Fla. (emphasis added).[1]
When the legislature amended section 171.044(4) in 1975, the County was not a charter county.[2] It became a charter county in 1980. Its charter does not provide for an exclusive method of voluntary municipal annexation.
Our record suggests that the County's growth, increasing density, and planning needs counseled in favor of a county-wide method of voluntary municipal annexation. Accordingly, in November 2000, the County's voters adopted Ordinance 00-66 (the Charter Ordinance). The Charter Ordinance amended the County charter to provide that all voluntary annexations must comport with an exclusive method and criteria to be set forth in another ordinance. Concurrently, the County commission adopted Ordinance 00-63 (the Voluntary Annexation Ordinance) that provided the exclusive method for voluntary annexation, delineating areas eligible for municipal annexation.
The lawsuit underlying this appeal stems from the County commission's adoption of Ordinance 02-48 (the Contraction Ordinance). The County sought to contract the size of certain municipalities, including the Cities. A "`contraction' means the reversion of real property within municipal boundaries to an unincorporated *851 status." § 171.031(2). The Cities filed suit seeking to invalidate all three ordinances.
The Cities moved for summary judgment. The trial court concluded that section 171.044(4) did not allow the County to adopt its own method of annexation.[3] Alternatively, the trial court concluded that the Charter Ordinance violated general law because it did not provide for an exclusive method of voluntary municipal annexation in the county charter; it merely delegated the authority to do so by ordinance to the County commission. As a consequence of these rulings, the Voluntary Annexation Ordinance and the Contraction Ordinance necessarily were invalid.
On appeal, the County argues that section 171.044(4) allows charter counties to provide for an exclusive method of voluntary municipal annexation. It also argues that such method can be set forth in an ordinance. The Cities, on the other hand, contend that part I of chapter 171 preempts the entire field of annexation and does not authorize charter counties to regulate voluntary annexation. The Cities argue that, even if charter counties have such authority, the method of voluntary annexation must rest in the County charter.

Analysis
The trial court's final summary judgment is based on an interpretation of section 171.044(4). Our "standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." Shaw v. Tampa Elec. Co., 949 So.2d 1066, 1069 (Fla. 2d DCA 2007) (quoting Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001)). "Statutory interpretation is a question of law subject to de novo review." BellSouth Telecomm., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003); see also State v. Serrago, 875 So.2d 815, 818 (Fla. 2d DCA 2004).
The Fourth District recently addressed the issue before us in Village of Wellington v. Palm Beach County, 941 So.2d 595 (Fla. 4th DCA 2006). The result is sound. Accordingly, we align ourselves with our sister district.
In Village of Wellington, Palm Beach County attempted by a charter amendment to provide for an exclusive method of voluntary municipal annexation. Id. at 597. As here, the amendment authorized the Palm Beach County Commission to adopt, by ordinance, the method of voluntary municipal annexation. See id. at 598. Affirming the trial court, the Fourth District held that the "requirement in section 171.044(4) that the exclusive method of voluntary annexation be contained in the Charter itself was violated by allowing the County Commission to use an ordinance to accomplish the same goal." Id. at 601. We agree that article VIII, section (1)(g) of the Florida Constitution and section 171.044(4) require that any exclusive method of voluntary municipal annexation be contained in the county charter.
Village of Wellington also held that the trial court correctly interpreted section 171.044(4) to allow charter counties to provide their own exclusive methods of voluntary municipal annexation. Id. at 600. Again, we agree with the Fourth District. The Fourth District, however, did not detail its reasoning. Presumably, it found the statute clear and unambiguous. See Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984) (when language of statute is clear *852 and unambiguous and conveys a clear and definite meaning, there is no reason to resort to rules of statutory interpretation and construction; statute must be given its plain and obvious meaning).
1. Charter County Authority to Adopt Exclusive Method of Voluntary Annexation.
Under the Act, the voluntary annexation provisions of section 171.044(4) are inapplicable "to municipalities in counties with charters which provide for an exclusive method of municipal annexation." § 171.044(4). On its face, the statute contemplates that a charter county may provide for its own exclusive method of voluntary annexation. Only then do the section 171.044(4) voluntary annexation provisions not apply to the pertinent municipalities. Reading chapter 171 as a whole, we are convinced that the legislature intended such a result. See Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla. 2003).
Particularly telling is the 2006 enactment of part II of chapter 171, providing for Interlocal Service Boundary Agreements. See § 171.20-.212, Fla. Stat. (2006).[4] The legislature specifically referred to section 171.044(4):
Effect of part on interlocal agreement and county charter. . . . [A] charter provision adopted under s. 171.044(4) . . . is not affected by this part. . . . A local government within a county that has adopted a charter provision pursuant to s. 171.044(4) may avail itself of the provisions of this part which authorize an interlocal service boundary agreement if such interlocal agreement is consistent with the charter of that county, as the charter was approved, revised, or amended pursuant to s. 125.64.[[5]]
See § 171.21 (emphasis added).
In our view, the legislature recognized and anticipated that a charter county can adopt an exclusive method of voluntary municipal annexation. The language of section 171.044(4), reinforced by subsequent legislation, leads inexorably to the conclusion that the County may provide for such a method. See Village of Wellington, 941 So.2d at 600.
The Cities caution us that the legislature preempted the field of annexation, thus withholding from charter counties any authority over annexation matters. Relying principally on SCA Services of Florida, Inc. v. City of Tallahassee, 418 So.2d 1148, 1150 (Fla. 1st DCA 1982), the Cities posit that the purposes of the Act listed in section 171.021, read in conjunction with section 171.022, prohibit charter counties from adopting an exclusive method of voluntary municipal annexation. SCA Services concluded that the legislature intended to provide a clearly defined and exclusive method for annexation and to share its annexation power with municipalities. 418 So.2d at 1149. SCA Services does not address county government powers, and we cannot discern that it directly involved section 171.044(4). In any event, the appellee, there, had not met the prerequisites for annexation. Id.
*853 Here, the trial court concluded that section 171.044(4) did not allow the County to adopt an exclusive method of voluntary municipal annexation. The trial court's reliance on Charlotte County Board of County Commissioners v. Taylor, 650 So.2d 146, 148-49 (Fla. 2d DCA 1995), and Ellis v. Burk, 866 So.2d 1236, 1238-39 (Fla. 5th DCA 2004), suggests that it found that allowing charter counties to do so would create inconsistency with a general law that already provided for the exclusive method of voluntary annexation. Taylor and Burk involved county charter tax cap amendments that were preempted by statutory budget and tax rate provisions. Their holdings are inapposite here.
The legislature can expressly or impliedly preempt counties' authority to act. Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1018 (Fla. 2d DCA 2005). Preemption takes an area in which local government might otherwise act and reserves that area for regulation exclusively by the legislature. Id. Express preemption requires clear language stating such intent. Id.
The so-called preemption provision of the Act provides:
Preemption; effect on special laws.
(1) It is further the purpose of this act to provide viable and usable general law standards and procedures for adjusting the boundaries of municipalities in this state.
(2) The provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974, are repealed except as otherwise provided herein.
Section 171.022 identifies a legislative purpose and repeals specified legislative or municipal charter provisions. We cannot conclude that this language reflects a clear and unambiguous legislative intent to oust charter counties from the annexation arena, especially when section 171.044(4) envisions such involvement.
To the extent that the Cities urge us to find implied preemption, we are unpersuaded. We will imply preemption only when "the legislative scheme is so pervasive as to evidence an intent to preempt the particular area and where strong public policy reasons exist'" for finding preemption. Phantom of Clearwater, 894 So.2d at 1019 (quoting Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826 (Fla. 1st DCA 1996)). "When courts create preemption by implication, the preempted field is usually a narrowly defined field, limited to the specific area where the Legislature has expressed their will to be the sole regulator.'" Id. Reading sections 171.021, 171.022(1), and 171.044(4) together, we discern no implied preemption in the field of voluntary annexation in charter counties.
Next, we must address the Cities' concern that allowing charter counties to adopt an exclusive method of voluntary municipal annexation undermines the Act's purposes and gives unfettered discretion to a charter county in devising its voluntary annexation method. We reject the suggestion that a charter county can proceed unchecked. Importantly, a charter county cannot act contrary to constitutional or general law. See art. VIII, § 1(g), Fla. Const.[6]; State v. Sarasota County, 549 *854 So.2d 659, 660 (Fla.1989) (explaining that charter provisions inconsistent with general law will be unconstitutional under article VIII, section 1(g) if "inconsistent with general law"-i.e., "contradictory in the sense of legislative provisions which cannot coexist." (citations omitted)). Further, the Act, itself, constrains a charter county. For example, any annexation "shall be designed in such a manner as to ensure that the area will be reasonably compact." § 171.031(12). And, of course, a charter county's method of voluntary municipal annexation must be consistent with the Act's purposes as expressed in section 171.021. We are also mindful that any authority bestowed by section 171.044(4) is a statutory grant subject to legislative amendment, another check on charter county action.
Apparently recognizing the unique concerns of local areas, however, the legislature devised a plan, limited to charter counties in the area of voluntary annexation, that fosters local experimentation. A charter county may devise a method of voluntary annexation that differs from one adopted by another charter county. But, that experimentation remains constrained by general law. Thus, charter counties must act uniformly in the sense that they advance the Act's purposes.
The Cities also argue that section 171.044(4) was intended to apply only to Dade County, the only constitutionally-recognized charter county in Florida. See art. VIII, § 6(e), (f), Fla. Const. We are unpersuaded. Section 171.071 provides that
Municipalities within the boundaries of Dade County shall adopt annexation or contraction ordinances pursuant to methods established by the home rule charter established pursuant to s. 6(e), Art. VIII of the State Constitution.
Section 171.044(4) speaks in terms of "counties with charters." The use of the plural does not support the limitation urged by the Cities. Moreover, on its face, section 171.071 limits municipalities within Dade County. The language says nothing about other charter counties.
We are similarly unmoved by the Cities' argument that only counties that had charters in 1974 or 1975 fall under section 171.044(4). The statutory language supports no such limitation.
To the extent that the trial court concluded that a charter county could not adopt an exclusive method of voluntary municipal annexation, it erred.
2. Placement of Voluntary Annexation Method in Charter.
We join the Fourth District in holding that an exclusive method of voluntary municipal annexation by a charter county must be contained in the charter. See Village of Wellington, 941 So.2d at 601. The statutory language of section 171.044(4) compels that result. See Acosta v. Richter, 671 So.2d 149, 153-54 (Fla. 1996). Section 171.044's voluntary annexation provisions do not apply to municipalities "in counties with charters which provide for an exclusive method of municipal annexation." § 171.044(4). A plain reading of the statute makes obvious that the charter, itself, set forth the method, not that charter counties may delineate the process in an ordinance.
Our conclusion, again, is bolstered by section 171.21. The two references in section 171.21 to a charter provision discussed earlier reflect a legislative intent that the *855 method of annexation be in the charter, not in an ordinance.
The Charter Ordinance, No. 00-66, does not set forth the exclusive method of annexation; the Voluntary Annexation Ordinance, No. 00-63, accomplishes that task. Given the statutory language, however, we cannot accept the County's position that the legislature intended to delegate the power to delineate the voluntary annexation framework to county officials. That power resides with the voters who may amend their charter to provide such a method. See Village of Wellington, 941 So.2d at 601. The trial court correctly ruled in favor of the Cities on this point.

Conclusion
In summary, we hold that section 171.044(4) allows the County to provide an exclusive method of voluntary municipal annexation in its charter. Although the trial court erred in concluding that a charter cannot provide for such a method, the trial court properly invalidated the County's ordinances that purported to implement an exclusive method of voluntary municipal annexation. Ultimately, the Cities were entitled to a final summary judgment in their favor.
Summary judgment affirmed.
NORTHCUTT, C.J., and SALCINES, J., Concur.
NOTES
[1] Although legislative history is scant, chapter 75-297 apparently arose by committee substitute for House Bill No. 1231. The Committee on Community Affairs Staff Summary of House Bill No. 1231 indicates that the 1975 proposed amendments to chapter 171 were designed to "eliminate present inconsistencies and problem areas." The language added in the 1975 amendment was part of the 1973 predecessor statute, albeit briefly. See § 171.16(4), Fla. Stat. (1973); ch. 73-129, § 1, at 238-39, Laws of Fla. See also City of Sweetwater v. Dade County, 343 So.2d 953, 953 (Fla. 3d DCA 1977).
[2] Florida's charter counties numbered 19 as of 2005: Alachua, Brevard, Broward, Charlotte, Clay, Columbia, Duval, Hillsborough, Lee, Leon, Miami-Dade, Orange, Osceola, Palm Beach, Pinellas, Polk, Sarasota, Seminole, and Volusia. Florida Association of Counties http://www.fl-counties.com/ aboutflco/charter counties.shtml. Charters are formal written documents that confer powers, duties, or privileges on the county and must be approved, along with any amendments, by the voters of the county. Id.
[3] The parties do not dispute that the language at issue in section 171.044(4) applies only to voluntary annexation. See Village of Wellington v. Palm Beach County, 941 So.2d 595, 600 (Fla. 4th DCA 2006), review denied, 954 So.2d 29 (2007) (holding that the subject of section 171.044(4) is voluntary annexation).
[4] In enacting part II, the legislature established a more flexible process for adjusting municipal boundaries and to address the effects of annexation, to encourage intergovernmental coordination in planning, service delivery, and boundary adjustments, and to reduce intergovernmental conflicts and litigation. See § 171.201.
[5] Section 125.64, Florida Statutes (2005), provides for adoption of a county charter by vote of the county's electors. Section 125.60 provides that "[a]ny county not having a chartered form of consolidated government may . . . locally initiate and adopt by a majority vote of the qualified electors of the county a county home rule charter."
[6] CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.

Art. VIII, § 1(g), Fla. Const.