# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAHRAAB AHMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N24C-04-145 JRJ |
| | ) | |
| PORCHE CAPITAL LTD. and | ) | |
| ANTHONY PORCHERON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Date Submitted: November 8, 2024
Date Decided:  February 6, 2025

## MEMORANDUM OPINION

*Upon Defendants' Motion to Dismiss:* **GRANTED in part, DENIED in part**

Stephen B. Brauerman, Esq., Emily L. Skaug, Esq., Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, DE 19899; Seth H. Ostrow, Esq. (*pro hac vice*), Robert P. Feinland, Esq. (*pro hac vice*), Meister Seelig & Fein PLLC, 125 Park Avenue, 7th Floor, New York, NY 10017.  Attorneys for Plaintiff.

F. Troupe Mickler IV, Esq., Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899; John B. Horgan, Esq. (*pro hac vice*), Joanna R. Cohen, Esq. (*pro hac vice*), Ellenoff Grossman & Schole LLP, 1345 Avenue of the Americas, 11th Floor, New York, NY 10105.  Attorneys for Defendants.

**Jurden, P.J.**

## I. INTRODUCTION

In September 2023, Defendants Anthony Porcheron and Porche Capital Ltd. entered into a Purchase Agreement with Plaintiff Shahraab Ahmad to purchase 55% of the Membership Interests of Atlantic Coastal Acquisition Management LLC ("ACAM"). Plaintiff has sued Defendants for breach of contract and fraud in the inducement, claiming Defendants failed to pay Expenses, Liquidated Damages, and Pledged Shares required under the Purchase Agreement. Defendants seek to dismiss Plaintiff's fraud in the inducement claim pursuant to Superior Court Rule 12(b)(6). They also argue that because the Liquidated Damages Provision in the Purchase Agreement constitutes a penalty, it is unenforceable, and therefore Plaintiff's claim for Liquidated Damages should be dismissed. Defendants do not challenge Plaintiff's breach of contract claim. For the following reasons, Defendants' motion to dismiss Plaintiff's fraud in the inducement claim is **GRANTED**, and Defendants' motion to dismiss the Liquidated Damages Provision is **DENIED**.

## II. FACTS

In August 2023, Porcheron contacted Plaintiff to discuss a potential transaction in which Defendants would purchase the majority of ACAM shares from Plaintiff's investor group.[1] The next day, Plaintiff, Porcheron, and a partner of

---

[1] Pl.'s Am. Compl., Trans ID 74004810 (Aug. 9, 2024) ("Am. Compl.") ¶ 16. Plaintiff was the managing member of ACAM, and Porcheron is the managing director and chief executive officer of Porche Capital Ltd. *See id*. ¶¶ 2-3.

Clearthink participated in a call to discuss the purchase.[2] During the call, Porcheron represented that the proposed purchase of ACAM was to be funded by Clearthink's entity, Cleache Capital.[3] Further, Porcheron represented to Plaintiff that he and/or Porche Capital had the funds to complete the purchase of ACAM.[4] Based on this conversation, Plaintiff informed other bidders that he was moving forward with Defendants as the purchasers of ACAM.[5]

On September 19, 2023, Porcheron emailed Plaintiff stating, ". . . I expect the ability to make payments prior, but conseravatively [*sic*] even if the committed payment by Clearthink to Porche Capital fails, I can make this commitment from the working capital of Porche Capital."[6] Thereafter, the parties negotiated terms and exchanged drafts.[7]

On September 20, 2023, Plaintiff sent an email to Porcheron outlining the revisions he intended to make to the latest draft, including Defendants' obligation to "fully and unconditionally" guarantee the combined $180,000 payment for the extension costs made by Plaintiff.[8]

---

[2] *Id.* ¶ 17.
[3] *Id.* ¶ 18.
[4] *Id.* ¶ 19.
[5] *Id.* ¶ 20.
[6] *Id.*
[7] *Id.* ¶ 23.
[8] *Id.* ¶ 24.

On September 22, 2023, Plaintiff sent a redlined version of the draft agreement to Porcheron that included a Liquidated Damages Clause triggered in the event of a default.[9]  The Liquidated Damages Clause included in Section 1.06(f) of the draft states:

> If an Event of Default occurs, the amount of Expenses shall be doubled (the "Liquidated Damages").  The parties intend that the Liquidated Damages constitute compensation, and not a penalty.  The parties acknowledge and agree that the Sellers's harm caused by an Event of Default would be impossible or very difficult to accurately estimate as of the date hereof, and that the Liquidated Damages are a reasonable estimate of the anticipated or actual harm that might arise from an Event of Default.[10]

According to Plaintiff, the doubling of Expenses owed to Plaintiff as Liquidated Damages is derived from an estimate of litigation costs, the time needed to collect on the Expenses, and the opportunity cost of other investment opportunities.[11]  Later that day, Porcheron responded back to Plaintiff via email that he was "structurally fine with the agreement and its contents."[12]

On September 29, 2023, Defendants and Atlantic Coastal Acquisition Corporation ("ACAC") entered into the Purchase Agreement with ACAM and

---

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 43; *see also id.* at 10 n.2 ("Under the Purchase Agreement, an 'Event Default' would occur if Porcheron and/or Porche Capital failed to perform, breach, or otherwise default on its obligation to perform any of the 'Secured Obligations.'  The Secured Obligations as defined included the prompt payment of the Expenses.").

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27.

4

Plaintiff.[13] Pursuant to Section 1.01 of the Purchase Agreement, Porche Capital purchased 4,059,880 shares of Class A Common stock, one share of Class B Common Stock, and 3,033,334 private placement warrants, which represents approximately 55% of the membership interests of ACAM.[14]

Pursuant to Section 1.06(a) of the Purchase Agreement, Defendants were obligated to pay the following Expenses:

a. $100,000 incurred in connection with an amendment to ACAC's Certificate of Incorporation (the "Charter Amendment") and extending the date by which ACAC was to complete its initial business combination (the "Extension");

b. $80,000 deposit relating to the Extension;

c. $40,000 for legal services relating to the Charter Amendment;

d. $50,000 for other legal services related to the contemplated transactions; and

e. $200,000 in other costs accruing to ACAC. [15]

Neither Porche Capital nor Porcheron paid the Expenses by their respective deadlines, triggering the Liquidated Damages Clause set forth in Section 1.06(f) of

---

[13] *Id.* ¶ 29.
[14] *Id.* ¶ 30.
[15] *Id.* ¶¶ 37-38. Items (a) through (c) were due and payable by Porche Capital to Plaintiff on December 31, 2023, and items (d) and (e) were due and payable by Porche Capital to Plaintiff on November 1, 2023. Total Expenses amounted to $470,000.

the Purchase Agreement.[16] As a result, the amount owed by Defendants to Plaintiff went from $470,000 to $940,000.[17]

Section 1.06 of the Purchase Agreement secures Porcheron and Porche Capital's payment and guarantee obligations.[18] Pursuant to Section 1.06(c), Porche Capital pledged, assigned, and granted Plaintiff a first priority lien and security interest in (1) 320,000 shares of Inception Growth Acquisition Ltd. and (2) 100,000 shares of Brilliant Acquisition Corporation, along with all proceeds of these shares (together, the "Pledged Shares").[19]

Pursuant to Section 1.06, should Defendants fail to pay the Expenses, the Purchase Agreement requires Porche Capital to deliver to Plaintiff all existing certificates and other instruments representing the Pledged Shares on or before September 29, 2023.[20] And, if Defendants default on their payment obligations, Section 1.06(c) requires them "to cause each issuer of any uncertified Pledged Shares to agree that it will comply with Plaintiff's instructions concerning such uncertified Pledged Shares, without further consent from Porcheron or Porche Capital."[21]

---

[16] *Id.* ¶¶ 41-42.
[17] *Id.* ¶ 44.
[18] *Id.* ¶ 45.
[19] *Id.*
[20] *Id.* ¶ 46.
[21] *Id.* ¶ 47.

On October 20, 2023, Porcheron sent an email to Plaintiff confirming,

> We will have the $80k payment per the plan with Shahraab from the previous management next Friday and will ensure future payments are made for the extension. Our investor money had some unde [*sic*] delays and are now having our transfer over early next week, so wanted to make next Friday the absolute latest.[22]

Neither Porcheron nor Porche Capital made this payment.[23]

On February 13, 2024, Porcheron sent a letter to Plaintiff on Porche Capital letterhead acknowledging that Plaintiff incurred Expenses for proceeding with the Purchase Agreement and had yet to be reimbursed.[24] The letter included alternative ways to reimburse Plaintiff, which were different from what was required pursuant to the Purchase Agreement.[25]

On February 20, 2024, counsel for Plaintiff sent a letter to Defendants advising them of various breaches of the Purchase Agreement and asserting Plaintiff's demands for the Expenses, Liquidated Damages, and Pledged Shares.[26] Neither Porcheron nor Porche Capital responded to this letter.[27]

---

[22] *Id.* ¶ 48.
[23] *Id.* ¶ 49.
[24] *Id.* ¶ 52.
[25] *Id.*
[26] *Id.* ¶ 53.
[27] *Id.* ¶ 54.

## III.   STANDARD

Pursuant to Delaware Superior Court Civil Rule 12(b)(6), the Court may dismiss an action for failure to state a claim upon which relief can be granted.[28]  In reviewing a motion to dismiss, the Court accepts all well-pled allegations as true and draws every reasonable factual inference in favor of the non-moving party.[29]  To survive a motion to dismiss, the non-moving party must show there is a reasonable conceivability for their contentions.[30]  The Court will dismiss a complaint only if it appears "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[31]

## IV.   DISCUSSION

Defendants raise two arguments in their Motion to Dismiss.  First, Defendants aver that the Amended Complaint fails to state a claim for fraud in the inducement because it "merely rehashes the breach of contract claim."[32]  Second, Defendants argue that the Liquidated Damages Provision is an unenforceable penalty because it "states that the amount of expenses will be doubled in the event of default, *without respect to the damage actually sustained.*"[33]

---

[28] Del. Super. Ct. Civ. R. 12(b)(6).
[29] *Id*.
[30] *Cent. Mortgage Co. v. Morgan Stanley Mortgage Cap. Holdings. LLC*, 27 A.3d 531, 536-537 (Del. 2011).
[31] *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).
[32] Mot. to Dismiss at 13.
[33] *Id*. at 6 (emphasis in original).

## A.    Fraud in the Inducement Claim

For a fraud in the inducement claim to survive a motion to dismiss, a plaintiff must allege:

> (1) That the defendant made a false representation, usually one of fact; (2) with the knowledge or belief that the representation was false, or with reckless indifference to the truth; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) that plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of her reliance on the representation.[34]

Fraud claims are subject to the heightened pleading requirement of Rule 9(b), which requires that "a complaint must allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[35]

"[A] fraud claim alleged contemporaneously with a breach of contract claim may survive, 'so long as the claim is based on conduct that is separate and distinct from the conduct constituting breach.'"[36]    Specifically, the alleged

---

[34] *Grunstein v. Silva*, 2009 WL 4698541, at *12 (Del. Ch. Dec. 8, 2009).

[35] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) ("Despite these particularity requirements for the circumstances, though, state of mind and knowledge may be averred generally pursuant to Rule 9(b) because 'any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable.' While knowledge may be pled generally, when a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this "something" was knowable and that the defendants were in a position to know it.").

[36] *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *8 (Del. Super. Apr. 16, 2014) (citing *Taylor v. Maness*, 941 So.2d 599, 564 (Fl. Dist. Ct. App. 2006) (finding that the alleged misrepresentation was "clearly embodied in the terms of the contract" and was not conduct that was "separate and distinct from the conduct constituting the breach of contract").

9

misrepresentations "must involve either a past or contemporaneous fact or a future event that falsely implies an existing fact."[37] "A fraud claim will not stand if the misrepresentation pled is simply '[a]n unfulfilled promise of future performance,' unless 'at the time the promise was made the speaker had no intention of performing.'"[38]

In the Amended Complaint, Plaintiff addresses the elements of fraud in the inducement as follows: (1) Defendants made misrepresentations regarding their commitment and capability to pay the Expenses; (2) Porcheron knew the misrepresentations were false; (3) Defendants intended for their misrepresentations to induce Plaintiff to enter into the Purchase Agreement; (4) Plaintiff relied upon Defendants' misrepresentations that led him to enter into the Purchase Agreement; and (5) Plaintiff suffered damages by relying on Defendants' representations, including opportunity cost with other bidders as well as other investments with the money used for Expenses.[39]

Defendants argue that Plaintiff "does not make any allegations as to Defendants' alleged knowledge at the time that the alleged pre-Agreement representations were made . . ." and Plaintiff "fails to allege that he actually suffered

---

[37] *Id*.
[38] *Market America, Inc. v. Google, Inc.*, 2010 WL3156044, at *4 (D. Del. Aug. 9, 2010).
[39] Am. Compl. at 14-16.

actual damages resulting from [the] alleged misrepresentation by Defendants."[40]

According to Defendants, Plaintiff "does no more than rehash his damages allegations relating to his breach of contract claims while seeking an additional $9,000,000 based on alleged lost opportunities."[41]

The Court finds the Amended Complaint fails to allege "separate and distinct facts" in support of Plaintiff's fraud in the inducement claim.[42] As mentioned above, "[a] fraud claim will not stand if the misrepresentation pled is simply '[a]n unfulfilled promise of future performance,' unless 'at the time the promise was made the speaker had no intention of performing.'"[43] Based on the Amended Complaint, the alleged "misrepresentations" occurred between August 20, 2023 and September 19, 2023.[44] During that timeframe, Porcheron represented to Plaintiff that the purchase of ACAM would be completed by Clearthink, and, if Clearthink was unable to fulfill its commitments, Porcheron would use Porche Capital's working capital to make the payments.[45] Accepting Plaintiff's allegations as true, Defendants did not make the appropriate payments per the agreed upon Purchase Agreement, and their non-performance is the crux of this case. Because Defendants' alleged

---

[40] Mot. to Dismiss at 11.
[41] *Id*. at 12.
[42] *ITW Global Investments Inc. v. American Industrial Partners Capital Fund IV, L.P.*, 2015 WL 3970908, at *6 (Del. Super. Jun. 24, 2015).
[43] *Market America, Inc.*, 2010 WL 3156044 at *4.
[44] Am. Compl. ¶¶ 18-21.
[45] *Id*.

misconduct goes to the performance (or lack thereof) of the contract as opposed to inducement of the contract, Plaintiff has failed to successfully plead fraud in the inducement.[46]

Further, Plaintiff does not sufficiently plead that Defendants had no intention of performing at the time they made their promises. The Amended Complaint states that in October of 2023, Defendants sent an email explaining that their payments were delayed due to issues with their investor, and they were working to get Plaintiff $80,000 by the deadline established in the Purchase Agreement.[47] And in February of 2024, Porcheron sent Plaintiff a letter acknowledging that Plaintiff had not yet been reimbursed for Expenses he incurred and suggested alternative ways to reimburse Plaintiff.[48] While the Amended Complaint sets forth sufficient allegations

---

[46] *ITW Global Investments Inc.*, 2015 WL 3970908 at *6; *see also Furnari*, 2014 WL 1678419 at *1-2, *8 (The plaintiff sued for breach of contract and fraudulent inducement because the defendant failed to pay amounts allegedly owed under the contract. The Court dismissed the plaintiff's fraud claim as an impermissible bootstrap to the breach of contract claim because the plaintiff failed to allege any fraud that occurred prior to entering into the contract that induced the plaintiff into signing it.); *but see Osarm Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554 (Del. Ch. Nov. 19, 2013) (The plaintiff entered into a Stock Purchase Agreement ("SPA") with the defendants. After the closing, the plaintiff discovered that the defendants allegedly manipulated the acquired companies' financial statements to induce the plaintiff to enter into the SPA. The SPA represented and warranted that the financial statements were "correct and complete in all material respects . . . and fairly present[ed] the financial condition . . . of the Acquired Companies." The plaintiff alleged that the information in the financial statements did not fairly present the financial condition of the acquired companies and violated GAAP. The Court of Chancery refused to dismiss the fraud claim as impermissible bootstrapping because the plaintiff "pointed to specific misrepresentations by [the defendants] including misrepresentations about the sales results and financial condition of the [acquired companies] made before the [e]xecution of the SPA.").
[47] Am. Compl. ¶ 48. The $80,000 was due by Dec. 31, 2023. *See id.* ¶¶ 38-39.
[48] *Id.* ¶ 52.

for breach of contract, it fails to otherwise allege with particularity any fraud that occurred prior to the Purchase Agreement that induced Plaintiff into entering the agreement.

By failing to allege separate and distinct facts that focus on the inducement of the Purchase Agreement, Plaintiff impermissibly "bootstraps" his breach of contract claim into a fraud in the inducement claim.[49]  That Defendants had the funds to pay for the Expenses, Liquidated Damages, and Pledged Shares is embodied in the terms of the contract and is not conduct separate and distinct from the conduct constituting the breach of contract.[50]  Therefore, Defendants' motion to dismiss Plaintiff's fraud in the inducement claim is **GRANTED**.

## B.     Liquidated Damages Provision

Under Delaware law, liquidated damages provisions are generally enforced unless they operate as a contractual penalty.[51]   Such penalties are "void against public policy."[52]  To determine whether a provision is a penalty or a true liquidated damages provision, the Court must conduct a two-prong analysis:

> First, the Court must determine whether damages were certain, *i.e.*, capable of "accurate calculation," at the time of contracting.  If damages were calculable with a fair amount of precision, then a clause that concocts an aggravated total is a penalty.  And second, if damages were uncertain or at least could not be forecasted reliably, then the Court

---

[49] *Furnari*, 2014 WL 1678419 at *8; *see also ITW Global Investments*, 2015 WL 3970908 at *6 ("Allegations that are focused on *inducement* to contract are 'separate and distinct' conduct.").
[50] *See supra* note 36.
[51] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1032 (Del. Super. 2021)
[52] *Id.* (citing *Delaware Bay Surgical Services, P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006)).

13

must determine whether the amount selected is reasonable. . . . [T]o be unreasonable, "the amount at issue must be unconscionable or not rationally related to any measure of damages a party might conceivably sustain."[53]

Defendants ask the Court to dismiss the Liquidated Damages Provision because it is a penalty "void as against public policy and should not be enforced."[54] Conversely, Plaintiff contends Defendants "ignore the plain language" of the Liquidated Damages Provision, and the parties "stipulated to the very fact that the damages would be 'impossible or very difficult' to ascertain . . . ."[55]

At this preliminary stage, the Court cannot determine if the Liquidated Damages sought constitute a reasonable estimate of unascertainable damages in the Event of Default, or an unenforceable penalty.[56] The Court is not in a position to find the Liquidated Damages Provision unenforceable without discovery by the parties. Counsel will need to explore this issue in discovery and gather facts to support their positions.[57] Therefore, the Defendants' motion to dismiss the Liquidated Damages Provision in the Purchase Agreement is **DENIED**.

---

[53] *Id*. at 1032-33 (emphasis in original).
[54] Mot. to Dismiss at 8.
[55] Pl.'s Opp'n to Mot. to Dismiss, Trans. ID 74787338 (Oct. 17, 2024) at 15.
[56] *See DecisivEdge, LLC v. VNU Group, LLC*, 2018 WL 1448755, at *7 (Del. Super. Mar. 19, 2018) (denying Defendant's motion to dismiss Plaintiff's breach of contract claim because in order to determine if the "early termination provision" of the contract was enforceable, additional discovery was necessary).
[57] *Id*.

## V. CONCLUSION

Accepting all well-pled allegations as true and drawing every reasonable factual inference in favor of the non-moving party, the Court finds that Plaintiff failed to plead his fraud in the inducement claim with the requisite particularly. Without "separate and distinct" facts differentiating Plaintiff's fraud claim from his breach of contract claim, the fraud claim cannot survive a motion to dismiss. Accordingly, Defendants' motion to dismiss Plaintiff's fraud in the inducement claim is **GRANTED**, and Defendants' motion to dismiss Plaintiff's Liquidated Damages claim is **DENIED**.

**IT IS SO ORDERED.**

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

cc: Prothonotary

15