WOLF, J.
We decide for the first time whether a property owner can state a cause of action under section 70.001, Florida Statutes (2006), otherwise known as the “Bert J. Harris, Jr., Private Property Rights Protection Act” (Bert Harris Act), based upon mere adoption of an ordinance of general applicability pursuant to the police powers of a city in a situation where that municipality has taken no further action concerning application of the ordinance to a particular piece of property. We determine the specific language of the Bert Harris Act does not contemplate facial challenges to general, health, safety, and welfare ordinances of a municipality. In addition, any attempt to broadly extend the application of the Bert Harris Act to these circumstances would unduly constrain the exercise of municipal home rule pursuant to article VIII, section 2 of the Florida Constitution. We, therefore, affirm the decision of the trial court.

Facts and Procedural History

Appellant, M & H Profit, Inc. (M & H), purchased the subject property on Highway 98 in Panama City in February 2005, when the property was zoned General Commercial (GC-1) with no height or setback restrictions. M & H intended to build a 20-story residential condominium building on the property.
Approximately six weeks after M & H purchased the property, the City of Panama City (the City) passed an ordinance which was subsequently codified in its Land Development Regulation Code. The new ordinance imposed a 120-foot height restriction with additional setbacks and an absolute 150-foot limit on structures in the GC-1 zoning district. At the time the ordinance was passed, M & H had not filed a development application with the City.
In October 2005, M & H participated in an informal pre-application conference with the City Planning Manager. According to M & H, such informal conferences were the City’s customary way of handling the construction permitting process. M & H alleged that it is the City Planning Manager’s duty and authority to make determinations on informal applications before the filing of a formal building application. M & H asserted that for many years the City Planning Manager had held such informal pre-application meetings to review conceptual plans as a matter of custom in order to avoid unnecessary expenses.
Following informal discussions, the City Planning Manager sent a letter to M & H stating, “After a cursory review of the submittal, it is clear that it will not meet the pertinent requirements ... as they relate to setbacks and height.” Months later, M & H wrote the City Attorney asking “if there is some other action [M & H] could take that might overrule [the City’s] letter of Oct. 25, 2005?” The City replied that “[a]ny variance ... must be approved by the Board of Architects and the City Commission.”
In March 2007, less than one year after receiving the City’s latest letter, M & H submitted a Notice of Intention to File a Claim under the Bert Harris Act, along with appraisals supporting its claimed loss in the property’s fair market value. The City sent a Ripeness Determination to M *74 & H, stating M & H’s Notice of Claim did not fall within the scope of the Bert Harris Act.
M & H then filed a complaint in Bay-County Circuit Court pursuant to the Bert Harris Act, claiming the enactment of the relevant ordinance had caused a significant loss of value in its property. M & H alleged (1) it purchased the property in reliance on the GC-1 zoning classification, which then had no height or setback restrictions; (2) M & H’s reasonable investment-backed expectations were to develop the property “in accordance with the local rules and regulations for GC-1 zoning as then administered by the [City], which created an ‘existing use’ in the Subject Property as defined in F.S. § 70.001(3);” and (3) the City had “applied its new Ordinance to the Subject Property and/or take[n] the position that the new Ordinance is applicable” to the property.
The City filed a Motion to Dismiss for failure to state a cause of action under the Bert Harris Act, arguing the Act pertains only to as-applied challenges, not facial ones, and M & H never applied for a development order or building permit. Thus, the City argued, the mere enactment of the ordinance was not a legally sufficient ground to state a cause of action under the Act. In addition, the City pointed out that a 20-story residential condominium was not an “existing use” under the Act because the City’s Comprehensive Plan did not allow residential uses of the property in the GC-1 zone, nor did M & H have a vested right in its plan to develop the project merely by virtue of purchasing the property in February 2005.* Moreover, the City argued, M & H had no reasonable investment-backed expectation that it could develop a 20-story residential condominium project on the property.
The trial court granted the City’s Motion to Dismiss, finding the mere passage of the ordinance was a general action, not a specific governmental action which is required to trigger the Act.

Nature of Ordinance at Issue

The ordinance at issue in the present case sets general standards applicable throughout an entire zoning category; in this particular instance, it sets height and setback requirements. The ordinance does not change the land use classification or zoning category on any particular piece of property.
District-wide height and setback restrictions are normally considered to be enactments related to the general welfare of the community. WCI Cmtys., Inc. v. City of Coral Springs, 885 So.2d 912, 915 (Fla. 4th DCA 2004); Moviematic Indus. Corp. v. Bd. of County Comm’rs of Metro. Dade County, 349 So.2d 667, 669 (Fla. 3d DCA 1977).

Applicability of the Bert Harris Act

A trial court’s ruling on a motion to dismiss is subject to de novo review. See Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So.3d 400, 402 (Fla. 3d DCA 2009). We consider whether the trial court’s order dismissing the case for failure to state a cause of action is correct as a matter of law.
We quote the Bert Hams Act at length to properly analyze the Legislature’s intent regarding its enforcement:
(1) ... The Legislature recognizes that some ... ordinances of the ... political entities in the state, as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States Constitu *75 tion.... Therefore, it is the intent of the Legislature that, as a separate and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a[n] ... ordinance of ... a political entity in the state, as applied, unfairly affects real property.
(2) When a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property, the property owner of that real property is entitled to relief.... (3) For purposes of this section:
[[Image here]]
(b) The term “existing use” means an actual, present use or activity on the real property, including periods of inactivity which are normally associated ■with, or are incidental to, the nature or type of use or activity or such reasonably foreseeable, nonspeculative land uses, which are suitable for the subject real property and compatible with adjacent land uses and which have created an existing fair market value in the property greater than the fair market value of the actual, present use or activity on the real property.
[[Image here]]
(d) The term “action of a governmental entity” means a specific action of a governmental entity which affects real property, including action on an application or permit.
(e) The terms “inordinate burden” or “inordinately burdened” mean that an action of [a] ... governmental entit[y] has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property with respect to the real property as a whole, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large....
§ 70.001(1)-(3), Fla. Stat. (2006) (emphasis added).
It is well settled that legislative intent is the polestar that guides a courts statutory construction analysis. See Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 5 (Fla.2004). To discern legislative intent, courts must look first and foremost at the actual language used in the statute. See Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006). “When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). Courts are not at liberty to add words that were not placed there by the legislature. See Hayes v. State, 750 So.2d 1, 4 (Fla.1999); see also Karell v. Miami Airport Hilton/Miami Hilton Corp., 668 So.2d 227, 229 (Fla. 1st DCA 1996) (“Our task is to interpret and apply the statutes as written ... and not as one party or the other would like to have them written.”).
As reflected above, the plain and unambiguous language of the Bert Harris Act establishes the Act is limited to “as-applied” challenges, as opposed to facial challenges. Indeed, section 70.001(1), Florida Statutes, states the Bert Harris Act provides for relief “when a new law, rule, regulation, or ordinance ..., as ap *76 plied, unfairly affects real property.” (Emphasis added); cf. Taylor v. Village of N. Palm Beach, 659 So.2d 1167, 1170-73 (Fla. 4th DCA 1995) (explaining a facial challenge is based on the mere enactment of a regulation, whereas an as-applied claim is based on a specific application for development).
Legal commentators, including those involved in drafting the Bert Harris Act, have also recognized the Bert Harris Act is limited to “as-applied” challenges and does not provide for facial challenges based on the mere enactment of a new ordinance or regulation:
The Harris Act authorizes compensation only for as-applied challenges to governmental actions. This limitation can been [sic] seen in several provisions. For example, the statement of legislative intent makes clear that the Harris Act provides compensation “when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.”
Accordingly, the Harris Act may not be used to bring a facial challenge to a statute, rule, regulation, or ordinance; the governmental entity must specifically apply the statute, rule, regulation, or ordinance to the owners property in order for the owner to have a Harris Act claim.
David L. Powell, et al., A Measured Step to Protect Private Property Rights, 23 Fla. St. U.L. Rev. 255, 289 (Fall 1995) (emphasis added); see also Ronald L. Weaver, 1997 Update on the Bert Harris Private Property Protection Act, 71 Fla. Bar J. 70, 72 (Oct. 1997) (“The governmental action in question must have been ‘applied’ to the subject real property because the act does not apply to facial attacks.”).
Simply put, until an actual development plan is submitted, a court cannot determine whether the government action has “inordinately burdened” property:
Without the benefit of an actual development application and expert staff review to determine how the general requirement applies to a particular property, how can the impact of a density limitation be determined? It is common to find that a particular piece of property cannot develop to the maximum extent theoretically permitted by the code, when all of the setbacks, landscaping requirements, preservation of environmentally sensitive areas, traffic flow and parking requirements, etc., are taken into account. In that event, the financial effect of a downzoning could be overstated if it is measured with respect to the theoretical maximum density and not the density actually achievable on the property.
The actual achievable density cannot be known until one does the work of applying the regulations to the property. If claims are to be allowed under the act based on the mere enactment of a general density limitation, and the owner has not done this work, is the government now forced to site plan the property for the owner in order to figure it out? That seems to go beyond what should reasonably be expected of government. ...
Susan L. Trevarthen, Advising the Client Regarding Protection of Property Rights: Harris Act and Inverse Condemnation Claims, 78 Fla. B.J. 61, 63-64 (July/Aug. 2004); see also Ronald L. Weaver and Joni Armstrong Coffey, Private Property Rights Protection Legislation: Statutory Claims for Relief from Governmental Regulation, Florida Environmental & Land Use Law at 30.3-8 (June 2007) (stating the plain language of the Bert Harris Act supports the conclusion that “a jurisdiction-wide piece of legislation would not become *77 actionable under the Act until a property owner has applied for development approval and been denied under the provisions of the legislation”). Thus, the trial court properly held the mere enactment of a general police power ordinance or regulation does not give rise to a Bert Harris Act claim.
The decision not to broadly construe the Bert Harris Act in a manner which would expand its scope beyond its literal terms is also supported by basic principles of municipal home rule. In adopting article VIII, section 2 of the Florida Constitution, the citizens of this state expressed a desire that municipalities have broad home rule powers to protect the general health, morals, safety, and welfare of the residents of the municipality. Boca Raton v. Gidman, 440 So.2d 1277 (Fla.1983). In 1973, the Legislature implemented the will of the people and made clear its intent to allow broad exercise of home rule powers granted by the constitution. The Municipal Home Rule Powers Act, section 166.021(4), Florida Statutes (1979), provides in part that
[i]t is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general, or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited.
(Emphasis added).
Thus, an interpretation of state statutes which would impede the ability of local government to protect the health and welfare of its citizens should be rejected unless the Legislature has clearly expressed the intent to limit or constrain local government action. See Pinellas County v. City of Largo, 964 So.2d 847, 853-54 (Fla. 2d DCA 2007) (rejecting use of implied preemption where the State legislation was not so pervasive as to evidence an intent to be the sole regulator); Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1019-20 (Fla. 2d DCA 2005) (finding that state fireworks regulation was not so pervasive as to suggest implied preemption); GLA & Assoc., Inc. v. City of Boca Raton, 855 So.2d 278, 282 (Fla. 4th DCA 2003) (finding the Florida Beach and Shore Preservation Act did not so pervasively legislate the area of beach conservation as to preempt local protective ordinances); Palm Beach County v. Bellsouth Telecomm., Inc., 819 So.2d 876, 878 (Fla. 4th DCA 2002) (finding local ordinance charging BellSouth a land occupation fee was not impliedly preempted by State legislation); Lowe v. Broward County, 766 So.2d 1199, 1207 (Fla. 4th DCA 2000) (finding a county ordinance recognizing domestic partner relations and allowing for benefits to be paid to domestic partners of county employees was not impliedly preempted by state marriage laws), rev. denied, 789 So.2d 346 (Fla.2001).
The protection of the welfare of the local citizenry through the adoption of generally applicable land development regulations has been exclusively within the province of local government. Implied constraints within these particular areas should be even more carefully scrutinized. Cf. HTS Ind., Inc. v. Broward County, 852 So.2d 382 (Fla. 4th DCA 2003) (recognizing that in areas historically legislated by the states, the courts must narrowly construe any express preemption clauses so that if an ambiguity exists as to preemption, non-preemption should be found).
Applying the sanctions of the Bert Harris Act to local governments for the mere passage of ordinances dealing with the general police power needs of its citizens will severely limit the willingness of local *78 government to act. This clearly was not the intent of the people in adopting article VIII, sections 1 and 2 of the Florida Constitution. We decline to tie local governments’ hands in this matter, especially in light of the express language of the Bert Harris Act indicating its applicability to as applied challenges only.
Appellant also urges us to adopt the position that its informal discussions with the City Planning Manager and receipt of a letter constituted a specific application of the city ordinances to its particular property. We decline to do so for several reasons. First, these were informal communications with the City. Second, they constituted nothing more than statements that the general restrictions throughout the zoning district applied to appellant’s property just as they applied to every other property within the zoning classification. These statements did not constitute an application or a specific action as to a particular piece of property.
Finally, appellant argues this case is controlled by Citrus County v. Halls River Development, Inc., 8 So.3d 413 (Fla. 5th DCA 2009). It is unnecessary for us to address the correctness of that decision because we find it inapplicable in this ease. Citrus County involved an amendment to a comprehensive plan which reclassified the land use category on a particular piece of property. In this case, we are dealing with adoption of a general land development regulation effective throughout an entire zoning district. Citrus County is, therefore, not controlling.
We AFFIRM.
PADOVANO, J., concurs; THOMAS, J., dissents with opinion.

 In light of our ruling, it is unnecessary for us te reach this issue.