EN BANC

WOLF, J.
This is an appeal from a non-final order determining that appellant, City of Jacksonville’s construction and operation of a fire station on city property “inordinately burdened” the Smiths’ adjacent property, entitling them to relief pursuant to section 70.001, Florida Statutes (2012), the Bert J. Harris, Jr., Private Property Rights Protection Act (“the Harris Act” or “the Act”). We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(c)(viii). The dispositive issue in this case, which is strictly a legal one, is whether a property owner may maintain an action pursuant to the Harris Act if that owner has not had a law, regulation, or ordinance applied which restricts or limits the use of the owner’s property. *889 Because the issue involves pure statutory interpretation, our standard of review is de novo. Kuria v. BMLRW, LLLP, 101 So.3d 425 (Fla. 1st DCA 2012). We determine the Act simply does not apply where, as here, the Smiths’ property was not itself subject to any governmental regulatory action. The Act contains no language to indicate that it intends to create a whole new class of takings claimants who do not have to demonstrate that a governmental law, rule, or regulation had been applied to their property, nor is there language which would allow for claims based on non-regulatory governmental actions. Accordingly, we reverse and remand for entry of judgment in favor of the City. In light of the significance of the issue before us, however, we also certify a question concerning the Act’s applicability as being one of great public importance.

Facts

Appellees filed a cause of action asserting the City’s construction and operation of a fire station next to their property “inordinately burdened” their property pursuant to the Harris Act. Appellees asserted no other grounds for relief.[1]
In May 2005, appellees purchased a parcel of undeveloped riverfront property. This parcel and the adjacent riverfront lots were zoned “residential low density.” An undeveloped lot adjoining appellees’ property was owned by the City. A deed restriction limited use of the City’s lot to the leisure and recreation of Duval County employees. In October 2005, the City obtained a cancellation of this deed restriction. In March 2007, the City rezoned its property so that it could construct a fire station on the property.[2] Construction of the fire station began in December 2010. When it was completed, the station included a two-story, 13,000-square-foot building, which housed multiple fire and rescue vehicles, and a 265-foot dock with berths for two large fireboats and a Florida Marine Patrol boat.
In July 2012, appellees filed a complaint for damages under the Bert Harris Act, alleging that construction of the fire station “inordinately burdened” appellees’ property because it effectively made the property unmarketable as a luxury home site and diminished its value by $470,000. The City moved to dismiss the complaint for failure to state a cause of action under the Act because the City had taken no direct action against appellees’ property. The trial court denied the motion. Appellant raised the same argument unsuccessfully in a motion for summary judgment. A bench trial was held on the issue of whether construction of the fire station inordinately burdened appellees’ property.
After the trial, the court entered an order determining that appellees had a “vested right to build a home on the property, or to sell the property to someone who wished to build a residence thereon,” but “after the construction of the fire station, [appellees] have been left with an inordinate burden placed on the property as to its viability for such use.” The court rejected the City’s argument that the Act *890 did not apply because the City had not taken any action directly against appellees’ property.
The court directed that a jury be impaneled to determine the total amount of compensation due to appellees for the loss in value of their property resulting from the construction of the fire station. This appeal followed.

The Bert Harris Act

Section 70.001, Florida Statutes (2012), provides in pertinent part:
(1) This act may be cited as the “Bert J. Harris, Jr., Private Property Rights Protection Act.” The Legislature recognizes that some laws, regulations, and ordinances of the state and political entities in the state, as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States Constitution. The Legislature determines that there is an important state interest in protecting the interests of private property owners from such inordinate burdens. Therefore, it is the intent of the Legislature that, as a separate and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.
(2) When a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property, the property owner of that real property is entitled to relief, which may include compensation for the actual loss to the fair market value of the real property caused by the action of government, as provided in this section.
(3) For purposes of this section:
(d) The term “action of a governmental entity” means a specific action of a governmental entity which affects real property, including action on an application or permit.
(e) The terms “inordinate burden” and “inordinately burdened”:
1. Mean that an action of one or more governmental entities has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property with respect to the real property as a whole, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.
(Emphasis added).
The specific language of the Act indicates that in order to have a cause of action under the Act, governmental action must be directly “applied” to the claimant’s property. § 70.001(1), Fla. Stat. The statutory language requires a claimant to demonstrate both an action of a governmental entity and that the action “inordinately burdened” the property in question. § 70.001(2), Fla. Stat. To constitute an inordinate burden, the governmental action must “directly restrict[ ] or limit[ ] the use of real property.” § 70.001(3)(e)l, Fla. Stat. The Attorney General concluded in an official opinion issued shortly after the Act took effect that inherent in the statutory definition of “inordinate burden” and the Act as a whole is the requirement that the rule or regulation at issue must be directly applied to the plaintiffs property. *891 See Op. Att’y Gen. Fla. 95-78 (1995). The Attorney General went on to state:
The plain language of the statute indicates that only real property that is directly affected by a governmental regulation is covered by the provisions of the act. The act should be interpreted, therefore, in a manner that fulfills the legislative intent expressed in the statute, such that only real property that is directly affected by a governmental regulation or action is eligible for compensation pursuant to the act.
Considering that these provisions are tied to a specific parcel of real property, it does not appear that the Legislature contemplated extending the compensation provisions of the act to real property that may be incidentally affected by a governmental action or regulation directed at a separate, specific parcel of real property.
Id. (emphasis added).
The opinion of this court and the Attorney General that the Act requires a direct regulatory restriction for maintaining a Harris action is further supported by the previously quoted statutory language, the context of the statute when read as a whole, the stated Legislative purpose viewed in context of existing case law regarding regulatory taking at the time the Harris Act originally passed, and previous case law from this court. Further, the trial court’s interpretation of the Act would create a cataclysmic change in the law of regulatory takings which common sense dictates the Legislature would not have intended without directly and specifically providing for it.

Statute Read in Context

The trial court’s ruling improperly isolates one section of the statute, the definition of “action of a governmental entity,” to justify its interpretation that a cause of action may exist based on governmental use of the government’s own property without the application of a rule, regulation or ordinance directly limiting or restricting the use of plaintiffs property. § 70.001(3)(d), Fla. Stat. The language concerning “action” simply codified those types of actions which would support a regulatory taking and cannot be taken out of context to create a whole new class of plaintiffs who may bring actions based on the exercise of police power by government.
“ ‘[I]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole.... Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.’ ” Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1, 6 (Fla.2004) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)).
The expressed legislative intent, as well as numerous other sections of the Act, indicate the Harris Act only applies when rules, ordinances, or regulations are actually applied to the property in question.
In Section 70.001(1), Florida Statutes, the Legislature stated:
[I]t is the intent of the Legislature that, as a separate and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.
(Emphasis added).
Section 70.001(11) of the Act states: “A cause of action may not be commenced under this section if the claim is presented *892 more than 1 year after a law or regulation is first applied by the governmental entity to the property at issue.” § 70.001(11), Fla. Stat. (emphasis added). See also M & H Profit, Inc. v. City of Panama City, 28 So.3d 71 (Fla. 1st DCA 2009) (holding that cause of action only accrues under the Harris Act after the government applies a regulation to a specific piece of property). This section concerning the statute of limitations would make no sense if a cause of action could be triggered by a governmental action in reference to another person’s property.
The legislation further states at section 70.001(3)(e)2, Florida Statutes: “In determining whether reasonable, investment-backed expectations are inordinately burdened, consideration may be given to the factual circumstances leading to the time elapsed between enactment of the law or regulation and its first application to the subject property.” (Emphasis added).
Each of these sections belies the trial court’s conclusion that a cause of action may arise without the application of a regulation to a claimant’s property.

Historical Context and Effect of Harris Act

The Harris Act is grounded on a legislative recognition that “some laws, regulations, and ordinances ... as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States . Constitution.” § 70.001(1), Fla. Stat. Prior to the Harris Act, no cause of action for damages existed for a landowner in response to a governmental regulatory action unless a constitutional taking had taken place. Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d 912 (Fla.1985). The Act “filled a void in then-existing Florida law because, prior to its enactment, there was no means by which an owner could receive compensation for the adverse financial effects of governmental regulation of his land without satisfying the constitutional standards for a taking, namely, physical invasion or the loss of all economically viable use.” David L. Powell, et al., A Measured Step to Protect Private Property Rights, 23 Fla. St. U. L. Rev. 255, 265 n. 52 (1995) (citing Dep’t of Comm’y Aff., CS for HB 863 (1195) Staff Analysis 1 (May 15, 1995)); accord Brevard County v. Stack, 932 So.2d 1258, 1261, 1261 n. 5 (Fla. 5th DCA 2006) (explaining that the Harris Act created a new takings-related cause of action “where none previously existed,” and noting that “[t]he law of regulatory takings is insufficient to provide relief to private property owners unless those owners were either ousted from, or deprived of, all beneficial use of their property”). The focus, as reflected in the language of the Act, was on the level of damage a party had to demonstrate in order to maintain an action based on the regulatory action of government. The Act changed that standard from “deprivation of all reasonable beneficial use” to “inordinate burden.” The interpretation adopted by the trial court would create an entire new class of plaintiffs as well as allow for a new type of claims for non-regulatory as well as regulatory action. As previously explained, existing ease law does not allow a property owner to sue for damages based on actions which occur relative to government property. The Act simply contains no language to indicate that the Legislature intended to create a whole new class of takings claimants who do not have to demonstrate that a governmental law, rule, or regulation had been applied to their property, nor is there language which would clearly allow for claims based on non-regulatory actions of government.

Case Law Since Enactment of the Harris Act

The Bert. Harris Act took effect in 1995. Not one reported case indicates that a *893 plaintiff has obtained or even tried to collect damages pursuant to the Act without a law, regulation, or ordinance specifically being applied to the property at issue. While no court has specifically addressed the issue before us, this court in a slightly different context indicated in M & H Profit, Inc. v. City of Panama City, 28 So.3d 71 (Fla. 1st DCA 2009), that a cause of action under the Harris Act existed only after an ordinance had been applied to a particular piece of property. Citing to several known commentators, this court went on to indicate that the Act should not be applied in a manner that hamstrings a local government’s abilities to exercise the police powers for the general welfare of its citizens. Id. at 74, 75.
In addition, all major commentators, including several who participated in the drafting of the Harris Act, have rejected the contention that a cause of action exists for anyone who has not had a regulation applied to their property.
In David L. Powell, et al., A Measured Step to Protect Private Property Rights, 23 Fla. St. U. L. Rev. 255, 273, the author recognized that in order to have a cause of action under the Harris Act, there must be direct action against an owner’s property: “[a] governmental action which indirectly burdened or inadvertently devalued an owner’s land, because of regulatory decisions regarding another owner’s property, would be too attenuated for relief under the Harris Act.”
Powell went on to state in the article, which was cited with approval in our decision in M & H, 28 So.3d at 76, that in order to have a Harris Act claim, “the governmental entity must specifically apply the statute, rule, regulation, or ordinance to the owner’s property.” Powell, supra, at 289. See also Ronald L. Weaver, 1997 Update on the Bert Harris Private Property Protection Act, Fla. B.J., Oct. 1997, at 70 (recognizing the Act only protects direct, not indirect, restrictions and limitations of use).

Cataclysmic Change

The trial court’s holding that governmental action, both regulatory 'and non-regulatory, related to the use of another party’s property may support a Harris claim is unprecedented. Once the as-applied threshold is abandoned, any governmental action related to the use of property may engender litigation. As in this case, all state and local governmental entities would be subject to liability for construction and operation of facilities including, but not limited to, schools, courthouses, jails, and any kind of administrative building.
Even in the regulatory context, the government would be hamstrung. For instance, if a courthouse or school is built in or near a residential community, all of the nearby residential neighbors (not only adjoining) might have a cause of action if they can find an appraiser who says the increase in traffic or noise from the school or courthouse affects their property values. Both the approving entity and the operating entity might be subject to liability-
In addition to construction and operation, the trial court appears to contemplate that rezoning and permitting decisions are actionable. If this is true, we are not limiting potential liability to governmentally owned and operated property. For instance, if there were' governmental approval of a private development that arguably severely affected adjoining property, a cause of action for damages against the government would exist. Approval of a restaurant near residential property might support a cause of action against the approving government notwithstanding whether a cause of action against the restaurant exists. The decision would thus *894 severely affect the functioning of a number of levels of government.
In M & H, 28 So.3d at 77, we stated in discussing the Harris Act:
[A]n interpretation of state statutes which would impede the ability of local government to protect the health and welfare of its citizens should be rejected unless the Legislature has clearly expressed the intent to limit or constrain local government action. See Pinellas County v. City of Largo, 964 So.2d 847, 853-54 (Fla. 2d DCA 2007) (rejecting use of implied preemption where the State legislation was not so pervasive as to evidence an intent to be the sole regulator); Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1019-20 (Fla. 2d DCA 2005) (finding that state fireworks regulation was not so pervasive as to suggest implied preemption); GLA & Assoc., Inc. v. City of Boca Raton, 855 So.2d 278, 282 (Fla. 4th DCA 2003) (finding the Florida Beach and Shore Preservation Act did not so pervasively legislate the area of beach conservation as to preempt local protective ordinances); Palm Beach County v. BellSouth Telecomm., Inc., 819 So.2d 876, 878 (Fla. 4th DCA 2002) (finding local ordinance charging BellSouth a land occupation fee was not impliedly preempted by State legislation); Lowe v. Broward County, 766 So.2d 1199, 1207 (Fla. 4th DCA 2000) (finding a county ordinance recognizing domestic partner relations and allowing for benefits to be paid to domestic partners of county employees was not impliedly preempted by state marriage laws), rev. denied, 789 So.2d 346 (Fla.2001).
As discussed, the language of the Harris Act does not demonstrate a clear intent to effectuate the kind of broad policy change made here by the trial court. The trial court’s reading of the Harris Act imposes additional costs on the taxpayer through dramatically increased liability for government action. The supreme court has stated, “In the absence of a clear directive from the legislature, th[e] [cjourt should not impose such monumental costs on the citizens of Florida.” Allstate Ins. Co. v. RJT Enters., Inc., 692 So.2d 142, 143 (Fla. 1997). The dictates of the supreme court are equally applicable here; no such liability should be imposed without clear legislative language expressing such intent.
Further, the trial court’s broad interpretation of the Harris Act is contrary to the well-settled proposition that statutory waivers of sovereign immunity, such as the waiver in the Act, must be strictly construed, with any ambiguity concerning the scope of the Act resolved in favor of the government and against the claimant. See § 70.001(13), Fla. Stat; Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 928-29 (Fla.1983); State ex. rel. Div. of Admin, v. Olijf, 350 So.2d 484, 486 (Fla. 1st DCA 1977).
In sum, because the trial court’s opinion broadens the scope of the Harris Act far beyond its intended purpose and has the potential to open the floodgates for claims under the Act against state, regional, and local governmental entities whenever they approve development on one property (or conduct activities on their own property) that adversely impacts the value of another property, we reverse. We would leave it to the Legislature to expand the scope of the Act to encompass claims such as the claim filed by the Smiths in this case, if it is the will of that body to do so.
We, however, certify the following question in accordance with rule 9.030(a)(2)(A)(v) of the Florida Rules of Appellate Procedure, as one of great public importance:
*895 MAY A PROPERTY OWNER MAINTAIN AN ACTION PURSUANT TO THE HARRIS ACT IF THAT OWNER HAS NOT HAD A LAW, REGULATION, OR ORDINANCE DIRECTLY APPLIED TO THE OWNER’S PROPERTY WHICH RESTRICTS OR LIMITS THE USE OF THE PROPERTY?
BENTON, ROBERTS, WETHERELL, ROWE, MARSTILLER, RAY, OSTERHAUS, and BILBREY, JJ., concur.
SWANSON, J., dissents in part and concurs in part in an opinion in which PADOVANO, THOMAS, CLARK, and MAKAR, JJ., join.
MAKAR, J., dissents in an opinion in which PADOVANO, THOMAS; CLARK, and SWANSON, JJ., join.
LEWIS, C.J., recused.

. Appellees' sole cause of action was pursuant to the Harris Act. There is no cause of action based on nuisance or a request to abate activities which constitute a nuisance. In addition, while appellees assert that the City rezoned the property for a fire station without proper notice, the record does not reflect that appellees ever sought to challenge the City’s rezoning of the property based on lack of notice. These issues have no relevance to appellees' ability to maintain a Harris cause of action and will not be addressed within this opinion.

. Any action under the Harris Act based on this rezoning of the property, if such course of action existed, would be untimely. § 70.001(11), Fla. Stat.