NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FINR II, INC., a Florida corporation,

        Appellant,

v.                                 Case No. 2D14-788

HARDEE COUNTY, FLORIDA, a political
subdivision of the State of Florida,

        Appellee.

Opinion filed June 10, 2015.

Appeal from the Circuit Court for Hardee
County; Marcus J. Ezelle, Judge.

Edward P. de la Parte, Jr., David M.
Caldevilla, Patrick J. McNamara, Vivian
Arenas-Battles and Michael R. Bray of de la
Parte & Gilbert, P.A., Tampa, for Appellant.

Kenneth B. Evers of Kenneth B. Evers,
P.A., Wauchula, for Appellee.


SLEET, Judge.

        FINR II, Inc., appeals the order denying its motion to abate pending the

resolution of an adversary proceeding filed in bankruptcy court and granting Hardee

County's motion to dismiss FINR's original complaint with prejudice. We affirm the

denial of abatement without further comment. However, because the Bert Harris Act,

section 70.001, Florida Statutes (2013), provides a cause of action for a real property owner who suffers an inordinate burden on the existing use or a vested right to a specific use of their real property as a result of government action directed at adjacent real property, we reverse the dismissal of FINR's complaint.

## FACTUAL BACKGROUND

In 1996 FINR purchased real property in Hardee County which had a future land use designation for agriculture and public institutional purposes within Hardee County's Comprehensive Plan. FINR leased the property to FINR III, LLC, and the Florida Institute for Neurological Rehabilitation, which operate a brain treatment and vocational service facility for veterans and survivors of brain injuries. In February 2007, at the behest of the county, FINR filed an application to amend the Hardee County Comprehensive Plan and change the future land use designation for FINR's property to a rural center, which permits a mixed use development consisting of multifamily dwellings, commercial development, a hotel, office space, a hospital, and a significant expansion of the rehabilitation center. More importantly, the designation of FINR's property as a rural center would automatically entitle it to a quarter-mile setback from its property boundary within which phosphate mining activities are prohibited under the Hardee County Comprehensive Plan and Hardee County Unified Land Development Code Section 3.14.02.06(A)(01)(a). Hardee County approved FINR's application and designated the property as a rural center. As a result, the property adjacent to FINR's property became subject to the quarter-mile setback applicable to phosphate mining activities.

CF Industries, Inc., a phosphate company, owns the real property surrounding FINR's property on the north, east, and west.  In August 2010 CF Industries filed an application with the county to conduct new phosphate mining operations and obtain a major special exception and alternate setback on the property to allow mining activity closer to the boundary of FINR's property.  Pursuant to the County's Unified Land Development Code, in order to obtain the alternate setback CF Industries had to demonstrate that the mining operations would not significantly interfere with the current or planned uses within or adjacent to such land use classification.  In response to CF Industries' application, the county's planning staff recommended denial of the special exception.  However, in September 2012, Hardee County granted the special exception and request for alternate setback by adoption of Hardee County Resolution No. 12-21. Resolution 12-21 decreased the rural center setbacks and allowed CF Industries to mine within 150 feet to the west and north and within 207 feet to the east of FINR's property;[1] this reduced FINR's mining protection setback by 1215 feet on the north and west and by 1113 feet on the east.

## PROCEDURAL BACKGROUND

On January 4, 2013, FINR and its related entities filed for Chapter 11 bankruptcy protection to allow for reorganization.  In April 2013 FINR presented Hardee County with a notice of claim and appraisal under the Act, see section 70.001(4)(a), complaining about the burdensome effects of the reduced setback for mining operations on its property.  Hardee County rejected the claim and declined to rescind or modify its

_____

[1]We note that the new setback distances set forth in Resolution 12-21 were less than the 500-foot setback for mining activity near cemeteries required by Hardee County Unified Land Development Code Section 3.14.02.06(A)(01)(b).

- 3 -

setback reduction. Thereafter, FINR filed a complaint seeking compensation from Hardee County pursuant to the Act in the bankruptcy court. The following day, FINR filed an identical complaint in the Hardee County Circuit Court. FINR alleged in both complaints that CF Industries' mining activity resulted in excessive noise, vibration, and dust that precluded the use of FINR's property as a rehabilitation facility for the care and treatment of patients with traumatic brain injuries and that the new mining operations on the abutting property owned by CF Industries had decreased the fair market value of FINR's property by $38 million. FINR alleged that the mining relegated the highest and best use of FINR's property to merely agricultural and recreational land.

FINR then filed a motion to abate the state court action pending the resolution of the bankruptcy case. In response, Hardee County filed a motion to dismiss FINR's complaint and opposed the motion to abate. On January 27, 2014, the trial court denied the motion to abate and granted Hardee County's motion to dismiss with prejudice, concluding that FINR could not state a cause of action under the Act. This appeal followed.

**ANALYSIS**

We review an order granting a motion to dismiss de novo. Hussey v. Collier Cnty., 158 So. 3d 661, 664 (Fla. 2d DCA 2014). The issue before this court is whether FINR, as the owner of the property adjacent to the property that was subject to Hardee County's governmental action, can maintain a cause of action under the Bert Harris Act. For the reasons expressed below, we conclude that it can and certify conflict with City of Jacksonville v. Smith, 159 So. 3d 888 (Fla. 1st DCA 2015).

On appeal, FINR argues that the trial court erred in interpreting the Act to foreclose its cause of action against Hardee County.  Hardee County, however, relies on a 1995 opinion from the Attorney General as support for its assertion that the Act does not apply to adjacent property owners like FINR.  See Op. Att'y Gen. Fla. 95-78 (1995).  In that opinion, the Attorney General, who was provided with no specific factual scenario on which to base his opinion, concluded that the Act

> operates to provide a cause of action only for owners of real property that is directly affected by a governmental regulation and does not provide for recovery of damages to property that is not the subject of governmental action or regulation, but which may have incidentally suffered a diminution in value or other loss as a result of the regulation of the subject property.

Id.  We disagree.  "It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis.  In determining that intent, we have explained that we look first to the statute's plain meaning."  Mathews v. Branch Banking & Trust Co., 139 So. 3d 498, 500 (Fla. 2d DCA 2014) (quoting Gulf Atl. Office Prop., Inc. v. Dep't of Revenue, 133 So. 3d 537, 539 (Fla. 2d DCA 2014)).  "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."  Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (Fla. 1931)).

> The purpose and intent of the Act is as follows:
>
> (1)  This act may be cited as the "Bert J. Harris, Jr., Private Property Rights Protection Act."  The Legislature recognizes that some laws, regulations, and ordinances of the state and political entities in the state, as applied, may inordinately

burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States Constitution. The Legislature determines that there is an important state interest in protecting the interests of private property owners from such inordinate burdens. Therefore, it is the intent of the Legislature that, <u>as a separate and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.</u>

(2) When a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property, the property owner of that real property is entitled to relief, which may include compensation for the actual loss to the fair market value of the real property caused by the action of government, as provided in this section.

§ 70.001 (emphasis added). The Act defines "inordinate burden" to

[m]ean that an action of one or more governmental entities has directly restricted or limited the use of real property such that the <u>property owner</u> is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property with respect to the real property as a whole, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.

§ 70.001(3)(e)(1) (emphasis added). Pursuant to the plain language of the statute, in order to allege a claim under the Act the plaintiff must own the property alleged to be burdened by the specific governmental action. And subsection (3)(f) of the Act defines a property owner as "the person who holds legal title to the real property at issue." However, the statute does not define the term "real property at issue." As such, there is no clear expression of any intent to limit relief to property owners whose property was

- 6 -

the subject of the governmental regulatory action and deny relief to adjacent property owners.

Although the Act does not define the term "real property at issue," a plain reading of the Act demonstrates that the term refers back to the real property previously mentioned in subsections (1) and (2), which was "unfairly affected" and "inordinately burdened."  To limit the Act to afford a cause of action only to a property owner whose property was subject to the direct action of a governmental entity would be to rewrite the statute to insert an additional requirement not placed there by the legislature and would defeat the legislature's stated intent.  See Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999) (explaining that courts "are not at liberty to add words to statutes that were not placed there by the [l]egislature").  The cause of action created by section 70.001(2) contains no requirement that the regulation giving rise to the inordinate burden directly affect the burdened property.  The Act establishes broad protection for property owners who suffer economic loss from governmental property regulations and actions.  It was enacted to provide relief to those property owners who do not have an action for inverse condemnation or regulatory taking.  See, e.g., Smith, 159 So. 3d at 892 (citing Brevard Cnty. v. Stack, 932 So. 2d 1258, 1261, 1261 n. 5 (Fla. 5th DCA 2006)).  Accordingly, the trial court erred when it determined that FINR's property was not the real property at issue because it was not the property directly affected by and named in resolution 12-21.

In coming to this conclusion, we recognize that the First District recently addressed this issue in City of Jacksonville v. Smith, 159 So. 3d 888 (Fla. 1st DCA 2015).  In that case, the Smiths purchased a riverfront lot that was bordered by a luxury

home on one side and on another by an adjacent lot owned by the City, which for fifty years had been subject to a deed restriction limiting its use "solely and only for the recreation and enjoyment of such employees of Duval County as the County Commission . . . shall from time to time designate." Id. at 897 (Makar, J., dissenting). The Smiths intended to build a luxury home. Id. The City obtained a cancellation of the deed restriction on its property and, without giving notice to the Smiths, rezoned its property from residential to Public Building Facility-1 to allow for the construction and operation of a large marine fire station. Id. The Smiths brought an action under the Act, and the City filed a motion to dismiss, arguing that the Act did not apply because no governmental action had been taken directly against the Smiths' property. Id. at 898. The trial court denied the motion and the parties proceeded to trial. The trial court ultimately found that the City's construction and operation of the fire station inordinately burdened the Smiths' adjacent property.[2] Id. at 900. The City appealed that order, and in an en banc opinion with a nine-judge majority, the First District reversed the trial court and held that the Act does not provide a cause of action to a property owner whose property was not itself subject to any governmental regulatory action.

We decline to follow Smith. By holding that governmental action under the Act is limited to "those types of actions which would support a regulatory taking," the Smith majority construed the Act too narrowly. Id. at 891. Furthermore by reading into

---

[2]Section 70.001(6) sets forth two phases for Bert Harris Act claims: the trial court first determines "whether an existing use of the real property or a vested right to a specific use of the real property existed and, if so, whether, considering the settlement offer and statement of allowable uses, the governmental entity or entities have inordinately burdened the real property," and a jury then determines "the total amount of compensation to the property owner for the loss in value due to the inordinate burden to the real property."

the statute the requirement that the property inordinately burdened be the subject of the governmental regulatory action, the Smith majority ignores the legislature's intent– specifically set forth in the Act–to create "a separate and distinct cause of action from the law of takings" and to thereby provide "relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state . . . as applied, unfairly affects real property" but does not "amount[] to a taking under the State Constitution or the United States Constitution." See § 70.001(1). It is clear from the plain language of the Act that property owners do not have to show that a taking has occurred. Thus "government action," which is defined in the Act as "a specific action of a governmental entity which affects real property," is not properly limited to actions which amount to a regulatory taking. See § 70.001(3)(d). We agree with Judge Makar's dissent that "if the Florida legislature had intended to enact a more narrow meaning of governmental action, one consistent with the City's position, they could have easily done so." See Smith, 159 So. 3d at 906 (Makar, J., dissenting).

The question before the trial court in considering a claim made under the Act is not whether the governmental action is directly applied to the claimant's property but rather "whether an existing use of the real property or a vested right to a specific use of the real property existed and, if so, whether, considering the settlement offer and statement of allowable uses, the governmental entity or entities have inordinately burdened the real property." § 70.001(6)(a); see also City of Jacksonville v. Coffield, 18 So. 3d 589, 594 (Fla. 1st DCA 2009). As Judge Swanson stated in his dissent in Smith, "the statutory phrase 'directly restricted or limited the use of real property' is properly construed to refer to the issue of causation and simply requires the action of a

- 9 -

governmental entity to immediately and detrimentally affect the value of real property without the intervention of other factors." Smith, 159 So. 3d at 896 (Swanson, J., dissenting). If the alleged impact is indirect and incidental, the Act provides no relief.

Furthermore, contrary to the Smith majority's view, allowing adjacent property owners to make claims under the Act does not open a floodgate of litigation, nor does it create a "cataclysmic change in the law of regulatory takings." See id. at 891. Factual allegations remain crucial to a determination as to whether the claimant can state a cause of action under the Act, and the courts remain the gatekeepers evaluating the legal sufficiency of each claim. There is no language in the Act that would allow for its application to property that was only incidentally or remotely affected as a result of government action, and we do not read it to provide relief to those property owners who are so far removed from the action that the government could not reasonably anticipate their harm. See id. at 908 n.26 (Makar, J., dissenting).

If we were to agree with the Smith majority and conclude that adjacent property owners can never state a cause of action under the Act, governmental entities would be "free to disregard the legitimate interests and vested rights of adjacent landowners when deciding to locate jails, landfills, airports, waste incinerators, sewage treatment plants, power plants" and granting exceptions to allow for excavation, blasting, and mining in areas previously protected from such intrusions. See id. at 896 (Swanson, J., dissenting). Such a conclusion would be contrary to the expressly stated purpose of the Act. See Royal World Metro., Inc. v. City of Miami Beach, 863 So. 2d 320, 321 (Fla. 3d DCA 2003) ("[I]f a statute is fairly susceptible of two constructions, one

of which will give effect to it, and the other which will defeat it, the former construction is preferred.").

Hardee County's reduction of the mining setback on CF Industries' property directly affected FINR's alleged vested right and reasonable investment-backed expectation to expand its neurological rehabilitation facility and to develop its land consistent with its designation as a rural center. As such, FINR's complaint was sufficient to state a cause of action. Because we are reviewing an order granting a motion to dismiss, we "accept the facts stated in the complaint as true" and do not reach the factual disputes raised by the parties. See Hussey, 158 So. 3d at 664.

Accordingly, we hold that the Bert Harris Act provides a cause of action to owners of real property that has been inordinately burdened and diminished in value due to governmental action directly taken against an adjacent property. Therefore, we certify conflict with Smith, 159 So. 3d 888, reverse the order on appeal dismissing FINR's complaint with prejudice, and remand for further proceedings.

Affirmed in part, reversed in part, remanded, and conflict certified.

SILBERMAN, J., Concurs.
LaROSE, J., Dissents with opinion.

LaROSE, Judge, Dissenting.

For the reasons ably presented by Judge Wolf in City of Jacksonville v. Smith, 159 So. 3d 888 (Fla. 1st DCA 2015), I respectfully dissent.