DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GSK HOLLYWOOD DEVELOPMENT GROUP, LLC,**
Appellant,

v.

**THE CITY OF HOLLYWOOD, FLORIDA,**
a Florida municipal corporation,
Appellee.

No. 4D16-3453

[May 2, 2018]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. 09-032688 (13).

Harvey W. Gurland, Jr., Scott H. Marder and Lida Rodriguez-Taseff of Duane Morris LLP, Miami, for appellant.

Laura K. Wendell, Daniel L. Abbott and Adam A. Schwartzbaum of Weiss Serota Helfman Cole & Bierman, P.L., Fort Lauderdale, for appellee.

KUNTZ, J.

GSK Hollywood Development Group, LLC filed a two-count complaint against the City of Hollywood ("City"), asserting a violation of the Bert J. Harris, Jr. Private Property Rights Protection Act (the "Harris Act")[1] and a violation of its substantive due process rights. The circuit court entered a final judgment in favor of GSK on its Harris Act claim, and in favor of the City on the substantive due process claim. On appeal, both parties challenge the court's findings.

We find merit in the City's argument on cross-appeal.[2] The then-existing version of the Harris Act required "action of a governmental entity." Because GSK never asked the City to act through a permit or

---

[1] *See* § 70.001, Fla. Stat. (2010).

[2] We affirm, without further discussion, the issues raised by GSK on direct appeal as moot based on our resolution of the City's cross-appeal.

variance application, a waiver request, or otherwise, it was not entitled to recover under the Harris Act. We reverse the court's judgment against the City.

## *Background*

In 2002, GSK purchased two parcels of real property located on Hollywood Beach, intending to develop the Mirador Project, a luxury 15-story condominium, on the property. The property was zoned to permit construction of up to 150 vertical feet and up to 25 residential units per acre. Before purchase, GSK spoke to the City's Director of Planning and Zoning, who orally confirmed the zoning.

In 2004, while working on conceptual plans, GSK presented the Mirador Project to various city leaders at an informal event. Following this presentation, the mayor informed GSK that residents of Summit Towers Condos, a neighboring condominium association, were voicing opposition to the project. At trial, GSK presented evidence that the mayor was receptive to Summit's residents. The mayor responded to their emails, writing that she had "protected the Summit from every bad project that has come down the pike" and that "when the presentations are made and the vote is taken, I'm sure my vote will make my friends at Summit happy . . . as they always have."

Subsequently, the mayor introduced a proposal at a city commission meeting to reduce building-height limits from 150 feet down to 65 feet. Though the commission did not adopt the proposal, it ordered the City to begin a study on building heights.

After completing the study, the City's Planning and Zoning Board proposed a step-down ordinance, which would maintain the 150-foot height restriction, but gradually reduce building height approaching the beach. The commission rejected this plan on first reading while also rejecting the mayor's renewal of her proposal to immediately reduce building-height limits to 65 feet.

Days later, the mayor again placed her proposal on the agenda for the next commission meeting and, at her request, the city attorney prepared a new height ordinance limiting building height to 65 feet. At that meeting, the commission rejected the step-down ordinance proposed by the City's Planning and Zoning Board on second reading but the Mayor's new height ordinance passed on first reading. The commission formally approved the new 65 foot height ordinance at a later meeting.

2

GSK then filed its lawsuit against the City. GSK's complaint alleged the City violated its rights under the Harris Act by enacting a height ordinance with a height restriction that burdened its use of the property. The City moved for summary judgment on the basis that GSK's failure to submit an application to develop the property precluded it from establishing the City had applied a law or ordinance in a manner that burdened GSK's property.[3] The motion for summary judgment was denied without explanation.

The case went to trial. The City again argued GSK failed to apply for a permit or variance, which precluded recovery under the Harris Act. The court heard extensive testimony on the City's motion for directed verdict and again when the City renewed its motion. The court, however, did not orally rule on the issue. Instead, the record suggests the court informed the parties three separate times that a ruling on the motion would be forthcoming.

After oral argument, because of concerns that the issue was not preserved, we ordered the parties to direct the Court to any indication in the record showing the circuit court's ruling. The parties responded and disagree about how the circuit court conveyed its ruling. GSK asserts the court announced its oral ruling on liability during its instructions to the jury. The City argues the court announced its ruling during an unscheduled conference call from the court to the parties and later included its ruling on liability in the final judgment awarding damages. Regardless, both parties agree the court rejected the City's arguments and found the City liable under the Harris Act.

The City appeals the court's ruling at summary judgment and at trial, which rejected its argument that GSK's failure to apply for a permit, variance, or other formal relief precluded recovery under the Harris Act.

---

[3] In 2010, after filing the lawsuit in 2009, GSK formally submitted a preliminary site review plan to the City. Due to changes in the real estate market, this plan was substantially different than the plan at issue in this lawsuit. Regardless, the City's Technical Advisory Committee found GSK's project was "substantially compliant with the requirements of preliminary review." However, GSK informed the City it would not be seeking a height variance and the City's Planning and Development Services Department refused to sign-off on the project and schedule it for public hearing until either the application was amended to indicate a height variance or a settlement agreement was entered into regarding the project's proposed height.

***Analysis***

We review the court's ruling on the City's motion for summary judgment, and the legal rulings during trial, *de novo*. *Ionniedes v. Romagosa*, 93 So. 3d 431, 433 (Fla. 4th DCA 2012).

In 1995, the "Legislature recognize[d] that some laws, regulations, and ordinances of the state and political entities in the state, as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States Constitution." § 70.001(1), Fla. Stat. (2006). As a remedy, it enacted the Harris Act, and specifically stated in the statutory text:

> [I]t is the intent of the Legislature that, as a separate and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.

*Id.*

In this case, we are tasked with determining whether a property owner can state a claim under the Harris Act when he or she never formally applied to develop the property. We conclude the answer is no. A claim relating to building restrictions under the then-existing version of the Harris act does not accrue unless the property owner formally applied to develop the property; thus, allowing the governmental entity to specifically apply the law or ordinance to the property in question.

The plain language of the statute supports our conclusion. The statute contains several references to laws, regulations, and ordinances "as applied," as well as the "specific action of a governmental entity" and the "specific use" of real property.

The first subsection of the Harris Act states that the "Legislature recognizes that some laws, regulations, and ordinances of the state and political entities in the state, *as applied*, may inordinately burden, restrict, or limit private property rights . . . ." § 70.001(1), Fla. Stat. (2006) (emphasis added). It also states that "the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, *as applied*, unfairly affects real property." *Id.* (emphasis added).

4

The second subsection focuses on "*specific action* of a governmental entity," and "*specific use*" of real property. *Id.* § 70.001(2) (emphasis added). Similarly, the third subsection provides that the "term '*action* of a governmental entity' means a *specific action* of a governmental entity which affects real property, including *action* on an application or permit." *Id.* § 70.001(3) (emphasis added). And the "terms 'inordinate burden' or 'inordinately burdened' mean that an *action* of one or more governmental entities has *directly* restricted or limited the use of real property . . . ." *Id.* § 70.001(3)(e) (emphasis added).

Finally, a later subsection provides that a "cause of action may not be commenced under this section if the claim is presented more than 1 year after a law or regulation is *first applied by the governmental entity to the property at issue.*" *Id.* § 70.001(11) (emphasis added).

Thus, the statute's plain language establishes that a claim under the Harris Act does not ripen until the governmental entity specifically applies the law or ordinance to the property in question. Because the plain language of the statute answers the question presented, we need not resort to the rules of statutory construction. *14269 BT LLC v. Village of Wellington*, 43 Fla. L. Weekly D166, D167 (Fla. 4th DCA Jan. 17, 2018).

While the facts here are materially different, the issue here is nearly identical to the issue addressed en banc by the First District in *City of Jacksonville v. Smith*, 159 So. 3d 888 (Fla. 1st DCA 2015). In *Smith*, the majority explained that the "dispositive issue . . . is whether a property owner may maintain an action pursuant to the Harris Act if that owner has not had a law, regulation, or ordinance applied which restricts or limits the use of the owner's property." *Id.* at 888–89.

The Smiths filed a lawsuit under the Harris Act, claiming their property was inordinately burdened by the city's rezoning of an adjoining piece of land, which resulted in the construction and operation of a fire station next door. *Id.* at 889. Because it had taken no direct action against the property, the City argued the Smiths failed to state a claim. *Id.* On appeal, the en banc majority agreed. *Id.* at 894. The First District concluded that direct action by the government as to the property in question was required for a claim under the Harris Act to ripen. *Id.* Allowing a claim to be presented when the governmental entity took no direct action "broadens the scope of the Harris Act far beyond its intended purpose and has the potential to open the floodgates for claims under the Act against state, regional, and local governmental entities whenever they approve development on one property (or conduct activities on their own property) that adversely impacts the value of another property." *Id.* at 894.

5

Judge Makar's dissent in *Smith* provides further support for our conclusion in this case. In his dissent, Judge Makar argued that "facial claims directed to the mere enactment of a law, for example, are not permissible until the law is applied to the property in question. Thus, jurisdiction-wide enactments of general applicability cannot be challenged; to do so would constitute a 'facial' challenge, which the Act prohibits." *Id.* at 909 (Makar, J., dissenting). Judge Makar continued, stating "[u]ntil a government action is actually applied in a specific situation, the Act is dormant and merely inchoate. Contrarily, when an enactment is first applied to a property, it constitutes governmental action that may be subject to the Act in an 'as applied' context." *Id.* As discussed, GSK did not request a variance from the City to deviate from the ordinance. The ordinance at issue was never applied to the property, leaving the Harris Act claim "dormant" and "inchoate."

We also acknowledge, as the Fifth District recognized in *Citrus County v. Halls River Development, Inc.*, 8 So. 3d 413, 420 (Fla. 5th DCA 2009), the requirement that a property owner apply to develop property is not absolute. In *Citrus County*, the Fifth District explained the difference between a comprehensive plan and a zoning regulation. A "comprehensive plan is similar to a constitution for all future development within the governmental boundary"; whereas, "zoning involves the exercise of discretionary powers within limits imposed by the comprehensive plan." *Id.* at 420–21. In that case, the property owner argued the Harris Act claim could not be presented until an actual plan was submitted and rejected. *Id.* at 422. The court disagreed with the property owner and held that a change to a comprehensive plan can give rise to a claim under the Harris Act because a later zoning decision "that is not in accordance with the comprehensive plan is unlawful." *Id.* at 421. In other words, there was no action that could be taken to escape the effect of the "law or regulation" after the comprehensive plan was implemented.

This case is distinguishable from *Citrus County*. *See also M & H Profit, Inc. v. City of Panama City*, 28 So. 3d 71, 78 (Fla. 1st DCA 2009) ("*Citrus County* involved an amendment to a comprehensive plan which reclassified the land use category on a particular piece of property. In this case, we are dealing with adoption of a general land development regulation effective throughout an entire zoning district. Citrus County is, therefore, not controlling."). Furthermore, GSK could have acted to escape the zoning height requirement and, had it done so, the City may have granted it a variance allowing the property to be built. Because GSK failed to make a formal application to develop the property, the City did not apply

6

the ordinance to the property at issue.  Thus, the claim under the Harris Act was not ripe.

Finally, we again note that the statute has been amended and now uses different language than the language used in the version of the statute governing this dispute.  Our holding applies to the case before us and the version of the statute that governs this case.  We express no comment about whether the statutory amendments would have affected GSK's claims.

### *Conclusion*

GSK failed to seek a permit, variance, or other formal relief from the City before filing its Harris Act claim.  As such, the City took no specific action on GSK's property and the claim was not yet ripe.  If the Legislature intended to allow a claim in such a circumstance, it is for the Legislature to do so.  The judgment in favor of GSK is reversed with instructions to enter judgment in favor of the City.

*Reversed and remanded.*

WARNER and CONNER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

7